## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| 2 BIG LEGACY LLC, | CASE NO.: 22-58826-WLH |
| Debtor. | |

### MOTION TO ANNUL THE AUTOMATIC STAY *NUNC PRO TUNC* AND DISMISS DEBTOR'S BANKRUPTCY CASE

COME NOW Legacy Lending, LLC ("***Legacy***" or "***Movant***") and file this Motion to Annul the Automatic Say *Nunc Pro Tunc* Dismiss Debtor's Bankruptcy Case, showing the Court as follows:

### INTRODUCTION

This is the second bankruptcy case filed *pro se* by this Debtor in less than three months. The first case resulted in a September 16, 2022 dismissal order barring the Debtor from filing another petition within 180 days. (Case No. 22-57062-wlh.) On November 1, 2022, unbeknownst to Movant, just minutes before Movant were scheduled to conduct foreclosure sales of the properties securing the indebtedness owed to Movant, Debtor filed a voluntary bankruptcy petition, initiating the above-referenced case. The November 1, 2022 sale was cancelled because of a bankruptcy petition filed in the Eastern District of New York by Acorn Real Property Acquisition, Inc. ("***Acorn***") (Case No.: 22-42718-jmm) which claims an ownership interest in the apartment complex securing the Movant's loan. The Movant proceeded with rescheduling the sale for December 6, 2022 and mailed out the statutorily required notices. For the reasons discussed herein, Movant respectfully requests that the Court dismiss Debtor's case and enter an order annulling the automatic stay to allow Movant to move forward with the foreclosure on December 6, 2022.

## FACTUAL BACKGROUND

### A. Debtor's Indebtedness and Default

1.       Debtor 2 Big Legacy LLC ("***Debtor***") is indebted to Movant pursuant to the following Note which is secured by the following Security Deed:

    a.  Debtor is indebted to Legacy pursuant to that certain Note executed by Debtor on or about June 1, 2022 in the original principal amount of $11,900,000.00 ("***Note***"). A copy of the Note is attached as ***Exhibit A.*** The Note is secured by that certain Security Deed, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 1, 2022, and recorded on June 14, 2022 in Deed Book 65814, Page 320, Fulton County, Georgia records ("***Security Deed***"), encumbering real property located at 3751 Martin Luther King Jr. Drive SW, Atlanta, GA 30331 ("***Subject Property***"). A copy of the Security Deed is attached as ***Exhibit B.***

    b.  The foregoing Note and Security Deed are collectively the "***Loan Documents***."

2.       Movant is the present holder of the Loan Documents and is a secured creditor of the Debtor with first-priority security interest in the Subject Property and the revenues generated thereby.

3.       As of October 31, 2022, at least $12,536,330.92 was owed under the Loan Documents.

### B. Debtor's First Bankruptcy Case

4.       On September 16, 2022, the Court entered its Order Granting Motion to Dismiss Case, which order provides that Debtor is barred from filing a voluntary petition under chapter 7 or chapter 11 of the Bankruptcy Code within 180 days of the order (the "***Dismissal Order***," Case No. 22-57062, Doc. No. 19.)

**C.  *In Rem* Order From Prior Bankruptcy Case**

5.     In the Spring of this year a Standing Ovation Renovations, LLC filed a bankruptcy case claiming that it had an ownership interest in the Subject Property (Case No. 22-52645-wlh). In that matter, the debtor had been deeded the Subject Property shortly before the foreclosure sale by a prior creditor Nubridge Commercial Lending, LLC ("*Nubridge*") on the Subject Property. The proceeds of the Movant's loan were used to pay off Nubridge.

6.     In the prior action Nubridge moved for and was granted an Order pursuant to 11 U.S.C. § 362(d)(4)(A) (*see* Doc. No.: 51 Case No.: 22-52645)("*In Rem Order*"). The *In Rem* Order provides:

> "It is further ordered that relief from the Automatic stay is granted under 11 U.S.C. § 362(d)(4)(A): If recorded in compliance with applicable state laws governing notices of interest or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing." (*In Rem* Order)

7.     The *In Rem* Order was recorded on June 21, 2022 in Deed Book 65836 at Page 563 in the Fulton County Records, the location of the Subject Property. A copy of the recorded *In Rem* Order is attached as ***Exhibit C***. The deed to the Debtor was recorded on July 1, 2022 in Book 65879 at Page 291. A copy of the recorded deed to the debtor is attached as ***Exhibit D.*** Under Georgia law the Debtor had constructive notice of the *In Rem* Order.

**D.  The Foreclosure**

8.     On September 27, 2022, Movant provided written notice to Debtor of its default under the Loan Documents and that Movant was going to conduct a foreclosure sale of the Property on November 1, 2022. On the evening of October 31, 2022, counsel for Movant checked PACER to confirm that Debtor had not filed a new bankruptcy petition. On the morning of November 1, 2022,

prior to conducting the foreclosure sales, counsel for Movant again checked PACER to confirm that Debtor had not filed a new bankruptcy petition.

9.      These searches did not reflect a new case filed by Debtor.

10.      October 31, 2022, counsel for Movant received a telephone call from New York counsel for Acorn, notifying Movant that Acorn filed a voluntary petition under chapter 11 of the Bankruptcy Code and insisting that Movant stop the foreclosure sales. The Movant postponed its foreclosure sale of the Subject Property under December 6, 2022.

**E. Debtor's Second Bankruptcy Case**

11.      On November 1, 2022, Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code initiating the above-referenced case.

12.      Movant was not notified of the filing, but instead discovered it on November 9, 2022 during a PACER search while assisting New York co-counsel on the Acorn New York Bankruptcy Case.

13.      The petition was filed *pro se* and signed by Christopher Flournoy[1], allegedly as a member of Debtor. Upon information and belief, Mr. Flournoy is not an attorney.

14.      Debtor is a single asset real estate entity. (Doc. No. 1.)

15.      Debtor's petition does not list any unsecured creditors. (Id.)

16.      A recent title examination by Movant confirmed that Movant has a first-priority position lien on the Property.

<u>**ARGUMENT**</u>

**A. Debtor's Case Should Be Dismissed Because It Was Filed In Violation Of This Court's Order**

---

[1] On the eve of the foreclosure sale 2 Big Legacy, LLC deeded a ¼ interest in the Subject Property to Christopher Flournoy by quitclaim deed recorded on October 31, 2022 in Book 66273 at Page 101. Mr. Flournoy then filed a chapter 13 petition on November 1, 2022 (Case No.: 22-58812-wlh).

17.    As an initial matter, this case must be dismissed as it was filed in violation of this Court's order prohibiting Debtor from filing a voluntary bankruptcy petition within 180 days of the Dismissal Order. Debtor's first bankruptcy case was dismissed as a bad faith filing, and in addition to the fact that this filing was barred, it should also be dismissed as a bad faith filing.

18.    The Eleventh Circuit stated that while "there is no particular test for determining whether a debtor has filed a petition in bad faith…the court may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate effort of secured creditors to enforce their rights.'" *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988) (citation omitted).

19.    "[T]he determination of cause under § 1112(b) is 'subject to judicial discretion under the circumstances of each case.'" *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984) (citation omitted).

20.    "Particularly where there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate." *Id.* (affirming dismissal pursuant to Section 1112.)

21.    In *Piccadilly*, the Eleventh Circuit identified six circumstantial, nonexhuastive factors that evidence a bad faith filing:

    i.   The Debtor has only one asset, the Property, in which it does not hold legal title;
    ii.   The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;
    iii.   The Debtor has few employees;
    iv.   The Property is the subject of a foreclosure action as a result of arrearages on the debt;
    v.   The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Actions; and
    vi.   The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

849 F.2d at 1394-95 (affirming dismissal of Chapter 11 petition on the ground that it was made in bad faith); *see also In re State Street Houses, Inc.*, 356 F.3d 1345 (11th Cir. 2004) (holding that Piccadilly factors are appropriately considered when evaluating whether a Chapter 11 petition in a single real estate case was filed in bad faith).

22. Here, each of the *Piccadilly* factors weigh in favor of dismissing Debtor's bankruptcy case.

23. First, despite the fact that Debtor does not include the Property on its schedules, Debtor states that it is a single asset real estate debtor. (*See* Doc. No. 1 (indicating Debtor is a single asset real estate entity).) Further, the Property are pledged to Movant as collateral for the Note.

24. Second, Debtor's petition does not list any unsecured creditors. (Id.)

25. Third, upon information and belief, Debtor has few or no employees.

26. Fourth, the Property is the subject of a foreclosure action instituted by Movant, which actions are a result of Debtor's default under the Note.

27. Fifth, Debtor's financial problems involve essentially a dispute between Debtor and Movant, which can and should be resolved outside of this Court.

28. Finally, Debtor's chapter 11 filing, filed the day of the scheduled foreclosure, evidences nothing more than Debtor's effort to yet again delay Movant's attempt to foreclose on the Property and recover the amounts owed by Debtor. Additionally, the petition itself evidences Debtor's lack of good faith as it does not reference Movant or the Property.

29. Debtor's bankruptcy case should also be dismissed because it was not filed by an attorney. It is well settled law that a corporate entity can only appear in court through an attorney. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381 (11th Cir. 1985); *see also Nat'l Independent Theatre Distributors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 609-10 (11th Cir. 1984) (requiring corporate representation by counsel, recognizing the disruptive effect that pro se litigants may have on court proceedings); *In re RK Hospitality, LLC*, No. 11-52483-JB, 2011 Bankr. LEXIS 952, at *2

(Bankr. N.D. Ga. Mar. 10, 2011) (holding that corporations and partnerships, including limited liability companies cannot appear *pro se* through their shareholders or officers). Because Mr. Flournoy is not an attorney, he is not authorized to represent the Debtor in this bankruptcy case.

30.     Accordingly, there is cause to dismiss the Debtor's chapter 11 case.

31.     Movant, therefore, request that the Court dismiss Debtor's case.

**B.  The *In Rem* Order Provided That No Stay Exists As To The Subject Property**.

32.     The *In Rem* Order provided that if it was properly indexed under state law no future filing would result in a stay unless the debtor in the proceeding moved for an order extending the stay. The In Rem Order was properly recorded and the debtor in this action did not attempt to move for an order extending the automatic stay, thus no stay should exist.

33.     The Movant would respectfully request this Court enter an order reaffirming the *In Rem* Order applies to the Subject Property.

**C.  The Automatic Stay Should Be Annulled *Nunc Pro Tunc* To Allow Movant To Proceed to the December 6, 2022 Sale.**

33.     In addition to an order dismissing Debtor's case, Movant also seek an order annulling the automatic stay so that Movant proceed with the scheduled foreclosure sale on December 6, 2022.

34.     Movant sent Notices of Intent to Foreclose to Debtor on November 2, 2022 evidencing Movant's intention to proceed with foreclosure sale of the property on December 6, 2022.

35.     The automatic stay should be annulled so that Movant may proceed with the foreclosure sale scheduled December 6, 2022.

## <u>CONCLUSION</u>

For the foregoing reasons, Legacy Lending, LLC respectfully requests that the Court enter an order (a) dismissing Debtor's chapter 11 case with prejudice, (b) annulling the automatic stay to

allow Movant to proceed with their scheduled foreclosure sale of the Subject Property, (c) reaffirms

that the *In Rem* Order applies to the Subject Property and granting such other and further relief as is

just and proper.

This 15th Day of November, 2022.

<div style="margin-left: 40%">

Respectfully submitted,

**BELL CARRINGTON PRICE & GREGG, LLC**

By: /s/ J. Martin Page
</div>

339 Heyward Street, 2nd Floor      S. Lindsay Carrington (lcarrington@bellcarrington)
Columbia, SC 29201      Georgia Bar No.: 165708
803.509.5078      J. Martin Page (mpage@bellcarrington.com)

<div style="margin-left: 40%">

Georgia Bar No.: 241558
Jacob Greifer (jgreifer@bellcarrington.com)
Georgia Bar No.: 751515

*Attorneys for Legacy Lending, LLC*
</div>

# EXHIBIT A

# SECURED NOTE

(12 Month Term / 11 Interest Only Payments / 1 Balloon Payment)

**$11,900,000.00**                                                                    Date: 6/1/2022

Fulton, Georgia

**Property Address:**      *3751 Martin Luther King Junior Drive Southwest, Atlanta, GA 30331*

FOR VALUE RECEIVED, the undersigned, 2 Big Legacy LLC ("Borrower"), hereby promises to pay to Legacy Lending, LLC, or order ("Lender"), the principal sum of Eleven Million Nine Hundred Thousand Dollars and 00/100 Dollars ($11,900,000.00), together with interest on the unpaid principal balance of this Note, as follows:

The following is a breakdown of your initial monthly payment:

| | |
|---|---|
| Interest Only | $118,900.83 |
| TOTAL MONTHLY PAYMENT | $118,900.83 |

**1.   Interest**. Interest on the unpaid principal balance will accrue from the date the proceeds have been distributed to or on behalf of the Borrower (the "Date of Advance") at an annual rate equal to Eleven and 99/100 Percent (11.99%). Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days.  Interest for the odd days before the first full month is calculated on the basis of the actual days and a 360-day year.  All interest payable under this Note is computed using this method.

**2.   Payment Obligations.**

   **2.1.   Payments.**  Interest-only payments shall be due and payable in consecutive monthly installments of One Hundred Eighteen Thousand Nine Hundred Dollars and 83/100 Dollars ($118,900.83) on the 1st day of each month beginning on August 01, 2022. Such payments shall continue until the entire indebtedness evidenced by this Note and all accrued and unpaid interest and fees are fully paid, with any unpaid principal and interest due and payable on July 01, 2023 (the "Maturity Date").

Payments due under the Note shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under this Note and the Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.

   **2.2.   Balloon Payment.**  The payment schedule contained in this loan requires that Borrower make a balloon payment of Twelve Million Eighteen Thousand Nine Hundred Dollars and 83/100 Dollars ($12,018,900.83) on the Maturity Date plus any unpaid but accrued interest, fees and charges due under this Note.

   **2.3.   Delivery of Payments.**   Payments shall be made to Lender at Lender's address, which is provided in section 11 of this Note, or to another address if so designated by Lender.

   **2.4.   Order of Application of Payments.**  Each payment under this Note shall be credited in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Security Instrument, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

**2.5.** ~~Reserved~~

**2.6.** ~~Reserved~~

**2.7.** ~~Reserved~~

**3. Late Charge.** Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain. Borrower acknowledges and agrees that, if any payment due under this Note is not received by Lender within ten (10) days when due, a charge of 10 cents ($0.10) for each dollar ($1.00) that is not paid when due would be a reasonable estimate of expenses so incurred (the "Late Charge"). Without prejudicing or affecting any other rights or remedies of Lender, Borrower shall pay the Late Charge to Lender as liquidated damages to cover expenses incurred in handling such delinquent payment.

**4 . Default.** On (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise), (b) an Event of Default (as defined in the Security Instrument, or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

**5. Prepayment.**

**5.1. No Premium.** Borrower may prepay this Note in whole or in part at any time without penalty. All prepayments of principal on this Note shall be applied to the most remote principal installment or installments then unpaid.

**5.2.** ~~Reserved~~

**5.3.** ~~Reserved~~

BORROWER'S INITIALS: _CF_

**6 . Interest on Default.** If Borrower is in default under this Note, as that event is contemplated under Section 4 of this Note, or defaults under any other clause of the Security Instrument, or all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Note (collectively, along with the Note, the "Loan Documents), then the entire unpaid principal balance shall automatically bear an annual interest rate (instead of the rate specified in Section 1) equal to the lesser of (a) sixteen and 99/100 percent (16.99%) or (b) the maximum interest rate allowed by law (the "Default Rate"). If the Maturity Date is accelerated pursuant to Section 4, the unpaid principal shall accrue interest at the Default Rate only until the default is cured and the Security Instrument is reinstated. Borrower acknowledges and agrees that it would be extremely difficult or impractical to fix the actual damages resulting from Borrower's failure to pay the principal, accrued interest and other sums due on the Maturity Date, and therefore Borrower shall pay interest at the Default Rate not as a penalty, but for purposes of defraying the expenses incident to handling the past due principal, accrued interest and other sums due under this Promissory Note. Interest at the Default Rate represents the reasonable estimate of the loss that may be sustained by Lender due to the failure of Borrower to pay the principal, accrued interest and other sums due on the Maturity Date. Interest at the Default Rate shall be payable by Borrower without prejudice to the rights of Lender to collect any other amounts to be paid under this Promissory Note (including, without limitation, late charges pursuant to Section 3, above) or the Security Instrument.

**7. Interest on Interest.** If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

**8 . Due-on-Sale.** If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security

Instrument), or alienates the Property, or any interest in it, or suffers its title to, or any interest in, the Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Property; or if title to such Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by the Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Security Instrument, including those in Section 44 of the Security Instrument.

**9.   Attorney Fees.** Borrower agrees to pay the following costs, expenses, and attorney fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and attorney fees paid or incurred in connection with the collection or enforcement of this Note, whether or not suit is filed; (b) reasonable costs, expenses, and attorney fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (c) reasonable costs, expenses, and attorney fees incurred to protect the lien of the Security Instrument; and (d) costs of suit and such sum as the court may adjudge as attorney fees in any action to enforce payment of this Note or any part of it.

**1 0 .   Waiver.** Borrower, endorsers, and all other persons liable or to become liable on this Note waive diligence, presentment, protest and demand, and also notice of protest, demand, nonpayment, dishonor and maturity and consents to any extension of the time or terms of payment hereof, any and all renewals or extensions of the terms hereof, any release of all or any part of the security given for this Note, any acceptance of additional security of any kind and any release of any party liable under this Note. Any such renewals or extensions may be made without notice to Borrower.

**11.   Notice.**   Any notice required to be provided in this Note shall be given in writing and shall be sent (a) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (b) by first-class certified United States mail, postage prepaid, return receipt requested; or (c) by a nationally recognized overnight courier service, marked for next day business delivery. All notices shall be addressed to the party to whom such notice is to be given at the following addresses:

|  |  |
|---|---|
| Lender: | Legacy Lending, LLC |
|  | 461 NE Greenwood Ave, Suite C, Bend, Oregon 97701 |
| Borrower: | 2 Big Legacy LLC |
|  | 3681 Hunters Pace Drive, Lithonia, GA 30038 |

or to such other address as a party may designate by written notice to the other. All notices shall be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

**1 2 .   Secured by Security Instrument.**   This Note is secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Security Instrument") of even date herewith made by Borrower, as trustor, for the benefit of Lender, as beneficiary.

**13.   Forbearance Not a Waiver.** If Lender delays in exercising or fails to exercise any of its rights under this Note, such delay or failure shall not constitute a waiver of any Lender rights or of any breach, default, or failure of condition under this Note. No waiver by Lender of any of its rights or of any such breach, default, or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender.

**14.   Assignment.** This Note inures to and binds the heirs, legal representatives, successors, and assigns of Borrower and

Lender; provided, however, that Borrower may not assign this Note or any proceeds of it, or assign or delegate any of its rights or obligations, without Lender's prior written consent in each instance. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or the consent of Borrower.

**15.  Governing Law; Consent to Jurisdiction and Venue.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, the Security Instrument will be governed by the laws of the state in which the Property is located. In all other respects, the Security Instrument, the Note and all other documents related to the transaction are by agreement of the parties governed by the State of Oregon, unless expressly provided otherwise. The Parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Property, shall be the County in which notice shall be sent to Lender pursuant this Note, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: _CF_  _____

**16.  RESERVED.**

**17.  Usury.** All agreements between Borrower and Lender are expressly limited, so that in no event or contingency, whether because of the advancement of the proceeds of this Note, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note or the Security Instrument securing this Note or any other agreement pertaining to this Note, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

**18.  Time Is of the Essence.** Time is of the essence with respect to all obligations of Borrower under this Note.

**19.  Cross-Default.** Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any Affiliate of Borrower to Lender or any Affiliate of Lender; shall, at Lender's option, constitute a default under this Note. The following definitions shall apply to this Section:

"**Affiliate**"    means, with respect to any Person, any other Person that is directly or indirectly Controlling, Controlled by or under common Control with, such Person.

"**Control**"    and derivative terms means the possession, directly or indirectly, and acting either alone or together with others, of the power or authority to direct or cause the direction of the management, material policies, material business decisions or the affairs of a Person, whether through the ownership of equity securities or interests, by contract or other means.

"**Person**"    means any natural person, business, corporation, company, and or association, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, government authority or other legal entity.

BORROWER'S INITIALS: _CF_  _____

**20.  Dispute Resolution: Waiver of Right to Jury Trial**

**20.1.  ARBITRATION.**  CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

**20.2.  WAIVER OF RIGHT TO JURY TRIAL.**  TO THE EXTENT PERMITTED BY SAID APPLICABLE LAW, BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS NOTE. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS NOTE, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS NOTE OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS NOTE.

BORROWER'S INITIALS: _CF_ _____

**21.  Representation on Use of Proceeds.** Borrower represents and warrants to Lender that the proceeds of this Note will be used solely for business, commercial investment, or similar purposes, and that no portion of it will be used for personal, family, or household purposes.

**22.  Assignment.** Holder may, at its sole option, assign this Note and/or designate any other person or entity as the holder hereof.

**23.  No Modifications or Amendments; No Waiver.** Except as specified herein, this Note may not be amended, modified or changed, nor shall any waiver of the provisions hereof be effective, except only by an instrument in writing signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought. Additionally, a waiver of any provision in one event shall not be construed as a waiver of any other provision at any time, as a continuing waiver, or as a waiver of such provision on a subsequent event.

**24.  Severability.** Any provision of this Note which shall be held by a court of competent jurisdiction to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision or term hereof, and such other provisions or terms shall remain in full force and effect.

**25.  Successors and Assigns.** Whenever used herein, the terms "Lender" and "Borrower" shall be deemed to include their respective heirs, personal representatives, successors and assigns.

**26.  Cooperation.** Borrower acknowledges that Lender and its successors and assigns may (a) sell, transfer, or assign the Security Instrument, this Note, and other Loan Documents to one or more investors as a whole loan, in a rated or unrated public offering or private placement; (b) participate the Loan secured by the Security Instrument to one or more investors in a rated or unrated public offering or private placement; (c) deposit the Security Instrument, this Note, and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets in a rated or unrated public offering or private placement; or (d) otherwise sell the Note or interest therein to investors in a rated or unrated public offering or private placement. (The transactions referred to in clauses (a)-(d) are hereinafter referred to as "Secondary Market Transactions.") Borrower shall, at Lender's expense, cooperate in good faith with Lender in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements reasonably imposed by the participants involved in any Secondary Market Transaction (including, without limitation, a rating agency and/or an institutional purchaser, participant, or investor) including, without limitation, all structural or other changes to the Note, modifications to any documents evidencing or securing the Note, delivery of opinions of counsel

acceptable to the rating agency or such other purchasers, participants or investors, and addressing such matters as the rating agency or such other purchasers, participants, or investors may require; provided, however, that the Borrower shall not be required to modify any documents evidencing or securing the Note that would modify (i) the interest rate payable under this Note, (ii) the stated maturity of this Note, (iii) the amortization of principal of this Note, or (iv) any other material terms or covenants of the Note. Borrower shall provide such information and documents relating to Borrower, the Property, the Leases, and any lessees as Lender or the rating agency or such other purchasers, participants, or investors may reasonably request in connection with a Secondary Market Transaction. Lender shall have the right to provide to the rating agency or prospective purchasers, participants, or investors any information in its possession including, without limitation, financial statements relating to Borrower, the Property, and any lessee. Borrower acknowledges that certain information regarding the Note and the parties thereto and the Property may be included in a private placement memorandum, prospectus, or other disclosure documents.

**2 7 .** **Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Note shall be the joint and several obligations of each such Person.

**28.** **Capitalized Terms.** Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Security Instrument executed of even date herewith.

**29.** **Reserved.**

*[Signature Page Follows]*

**BORROWER:**

**2 Big Legacy LLC**

Christopher O. Flournoy, Member of 2 Big Legacy LLC

Date: 06-01-2022

©2007 Geraci Law Firm; All Rights Reserved

Rev. 4/11

Note

Loan No. 22141277

Borrower's Initials

# EXHIBIT B

Deed Book 65814 Page 320
Filed and Recorded 06/14/2022 01:40:00 PM
2022-0211200
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 2869972434

**RECORDING REQUESTED BY:**

MEDLEY & ASSOCIATES, LLC
2727 PACES FERRY RD SE BLD 2 STE 1450 ATLANTA, GA
30339

**WHEN RECORDED, RETURN TO:**

Legacy Lending, LLC
461 NE Greenwood Ave, Suite C,
Bend, 97701

## DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

**Note Amount:**     **$11,900,000.00**

**Property Address:    3751 Martin Luther King Junior Drive Southwest, Atlanta, GA 30331**

**NOTE TO CLERK OF COURT: THIS DEED SECURES A NOTE IN THE AMOUNT OF $11,900,000.00 PAYABLE ON July 01, 2023, ACCORDINGLY NO INTANGIBLE RECORDING TAX IS DUE.**

**THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH THE GEORGIA COMMERCIAL CODE AND IS TO BE INDEXED IN THE INDEX OF FINANCING STATEMENTS UNDER THE NAMES OF BORROWER, AS "DEBTOR" AND LENDER, AS "SECURED PARTY." A FURTHER STATEMENT RELATED TO THIS FIXTURE FILING IS CONTAINED IN SECTION 53 HEREOF.**

This Deed to Secure Debt, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Security Instrument" or "Deed of Trust") is made as of 6/1/2022, among 2 Big Legacy LLC, as grantor ("Borrower"), whose address is 3681 Hunters Pace Drive Lithonia, GA 30038; and, Legacy Lending, LLC, as beneficiary ("Lender"), whose address is 461 NE Greenwood Ave, Suite C, Bend, Oregon 97701.

**TRANSFER OF RIGHTS IN THE PROPERTY**

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Lender the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Lender, its successors in trust, and the Lender's assigns forever, and Borrower does hereby bind itself, its successors, and

©2007 Geraci Law Firm; All Rights Reserved          1                          Rev. 411

Borrower's Initials

its assigns to warrant and forever defend the title to the Mortgaged Property to Lender against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the State where the Property is located. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Lender, acting as both a Lender and an agent for Lender under this Security Instrument, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Security Instrument on any of the Mortgaged Property.

Borrower further irrevocably grants, transfers, and assigns to Lender the Rents.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS SECURITY INSTRUMENT, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

## DEFINITIONS.

nent, each of the following terms shall have the following respective

**1.1.** "**Attorney Fees.**" Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Security Instrument.

**1.2.** "**Borrower.**" The named Borrower in this Security Instrument and the obligor under the Note, whether or not named as Borrower in this Security Instrument, and subject to section 19 and section 20 of this Security Instrument, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such person.

**1.3.** "**Default Rate.**" The Default Rate as defined in the Note.

**1.4.** "**Event of Default.**" An Event of Default as defined in section 19 of this Security Instrument.

**1.5.** "**Environmental Laws.**" Any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) as amended (42 United States Code ("U.S.C.") §§ 9601-9675); the Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. §§ 6901-6992k); the Hazardous Materials Transportation Act (49 U.S.C. §§ 5101-5127); the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1376); the Clean Air Act (42 U.S.C. §§ 7401-7671q); the Toxic Substances Control Act (15 U.S.C. §§ 2601-2692); the Refuse Act (33 U.S.C. §§ 407-426p); the Emergency Planning and Community Right-To-Know Act (42 U.S.C. §§ 11001-11050); the Safe Drinking Water Act (42 U.S.C. §§ 300f-300j); and, all present or future environmental quality or protection laws, statutes or codes or other requirements of any federal or state governmental unit, or of any regional or local governmental unit with jurisdiction over the Mortgaged Property

**1.6.** "**Fixtures.**" All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the state where the Mortgaged Property is located,

©2007 Geraci Law Firm; All Rights Reserved

2

Rev 4/11

Borrower's Initials

including the Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

**1.7.** **"Governmental Authority."** Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

**1.8.** **"Governmental Requirements."** Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

**1.9.** **"Hazardous Substance."** Any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§5101-5127), and in the regulations promulgated under those laws; (b) substances defined as "hazardous wastes" under Environmental Laws and in the regulations promulgated under that law in the State where the Mortgaged Property is located and in the regulations promulgated under that law; (c) substances defined as "hazardous substances" under Environmental Laws in the State where the Mortgaged Property is located; (d) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations § 172.101 and amendments); (e) substances defined as "medical wastes" under Environmental Laws in the State where the Mortgaged Property is located; (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Mortgaged Property or of real property adjacent to it.

**1.10.** **"Impositions."** All real estate and personal property taxes, water, gas, sewer, electricity, and other utility ivision, planned unit development, or condominium declaration or :ement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Security Instrument may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

**1.11.** **"Improvements."** Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Lender under this Security Instrument.

**1.12.** **"Indebtedness."** The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

1.12.1.    The Note (including, without limitation, the prepayment premium, late payment, and other charges payable under the Note);

1.12.2.    This Security Instrument and all other Loan Documents;

1.12.3.    All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

1.12.4.    Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Security Instrument, including, but not limited to, funds advanced to protect the security or priority of the

©2007 Geraci Law Firm; All Rights Reserved                    3                                        Rev. 4/11

Borrower's Initials

Security Instrument; and

1.12.5. Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

**1.13.** **"Land."** The real estate or any interest in it described in Exhibit A attached to this Security Instrument and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

**1.14.** **"Leases."** Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

**1.15.** **"Legal Requirements."** Collectively, (a) any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any guarantor (with respect to the Indebtedness or the Mortgaged Property), or the Mortgaged Property, including, but not limited to, those concerning its ownership, use, occupancy, possession, operation, maintenance, alteration, repair, or reconstruction, (b) Borrower's or guarantor's presently or subsequently effective bylaws and articles of incorporation, or any instruments establishing any partnership, limited partnership, joint venture, trust, limited liability company, or other form of business association (if either, both, or all, by any of same), (c) any and all Leases and other contracts (written or oral) of any nature to which Borrower or any guarantor may be bound, and (d) any and all restrictions, reservations, conditions, easements, or other covenants or agreements now or later of record affecting the Mortgaged Property.

this Security Instrument and the owner and holder (including a cured by this Security Instrument, whether or not named as Lender ............., .evisees, administrators, executors, successors, and assigns of any such person.

**1.17.** **"Loan."** The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

**1.18.** **"Loan Documents."** Collectively, this Security Instrument, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan.

**1.19.** **"Mortgaged Property."** The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as   **3751 Martin Luther King Junior Drive Southwest, Atlanta, GA 30331**

**APN:** 14F-0015-0004-032-7

together with:

1.19.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

©2007 Geraci Law Firm, All Rights Reserved

4

Rev 4/11

$C\!\!\!\!F$ Borrower's Initials

1.19.2.    All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

1.19.3.    All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

1.19.4.    Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

1.19.5.    All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.19.6.    All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, : Mortgaged Property;

,_____ ,_____ ... .ny insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the loan secured by this Security Instrument or are required to be maintained by Borrower as provided below in this Security Instrument; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.19.8.    If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit A attached to this Security Instrument (the Leasehold) including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.19.9.    All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Mortgaged Property;

1.19.10.    All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

Borrower's Initials

1.19.11.   All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.19.12.   All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in the Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.19.13.   All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.19.14.   All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.19.15.   All proceeds of any of the foregoing.

As used in this Security Instrument, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

**1.20.** "**Note.**" The Promissory Note payable by Borrower to the order of Lender in the principal amount of **Eleven Million Nine Hundred Thousand Dollars and 00/100 Dollars ($11,900,000.00), which matures on July 01, 2023,** evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Promissory Note.

**1.21.** "**Obligations.**" Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, Documents or in any other document executed by Borrower in ty Instrument whether set forth in or incorporated into the Loan r provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Security Instrument; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Security Instrument.

The Obligations specifically exclude the Environmental Indemnity Agreement dated the date of this Security Instrument, executed by Borrower and any guarantor of the Loan, which is not secured by this Security Instrument.

**1.22.** "**Permitted Encumbrances.**" At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Security Instrument; and (c) liens in favor of or consented to in writing by Lender.

**1.23.** "**Person.**" Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

**1.24.** "**Personalty.**" All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery,

©2007 Geraci Law Firm, All Rights Reserved

6

Rev. 4/11

Borrower's Initials

tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the Uniform Commercial Code.

1.25. "**Rents**." All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

1.26. "**Uniform Commercial Code**." The uniform commercial code as found in the statutes of the state in which the Mortgaged Property is located.

1.27. "**Water Rights**." All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

Any terms not otherwise defined in this Security Instrument shall have the meaning given them in the Note dated of even date herewith between Borrower and Lender.

**UNIFORM COVENANTS**

2. **Repair and Maintenance of Mortgaged Property**. Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under Section 5 of this Security Instrument; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Security Instrument.

3. **Use of Mortgaged Property**. Unless otherwise required by Governmental Requirements or unless Lender otherwise provides prior written consent, Borrower shall not change, nor allow changes in, the use of the Mortgaged Property from the current use of the Mortgaged Property as of the date of this Security Instrument. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

4. **Insurance**.

©2007 Geraci Law Firm; All Rights Reserved

**4.1.** **Casualty Insurance.** Borrower shall at all times keep the Mortgaged Property insured for the benefit of Lender as follows, despite Governmental Requirements that may detrimentally affect Borrower's ability to obtain or may materially increase the cost of such insurance coverage:

4.1.1.    Against damage or loss by fire and such other hazards (including lightning, windstorm, hurricane, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the full insurable value (as defined in Section 4.9) of the Mortgaged Property, with a deductible amount not to exceed an amount satisfactory to Lender; Windstorm coverage is included under the extended coverage endorsement of most hazard policies, but in some states it may be excluded. If the hazard policy excludes the windstorm/hail endorsement a separate windstorm policy must be provided. The coverage amounts must equal that of the hazard policy;

4.1.2.    Rent loss or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

4.1.3.    Against damage or loss by flood if the Land is located in an area identified by the Secretary of Housing and Urban Development or any successor or other appropriate authority (governmental or private) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended, modified, supplemented, or replaced from time to time, on such basis and in such amounts as Lender may require;

4.1.4.    Against damage or loss from (a) sprinkler system leakage and (b) boilers, boiler tanks, heating and air conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, on such basis and in such amounts as Lender may require;

4.1.5.    During any alteration, construction, or replacement of the Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements, for an amount at least equal to the full insurable value of the Improvements, and workers' compensation, in statutory amounts, with provision for replacement with the coverage described in Section 4.1, without gaps or lapsed coverage, for any completed portion of the Improvements; and

4.1.6.    If applicable, against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender in the exercise of its business judgment in light of the commercial real estate practices existing at the time the insurance is issued and in the County where the Mortgaged Property is located.

**4.2.** **Liability Insurance.** Borrower shall procure and maintain workers' compensation insurance for Borrower's employees and comprehensive general liability insurance covering Borrower and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Mortgaged Property, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount of at least as Lender may require, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Security Instrument and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

**4.3.** **Other Insurance.** Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Mortgaged Property, as (a) may be required by the terms of any construction contract for the Improvements or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be required by Lender from time to time.

**4.4.** **Form of Policies.** All insurance required under this Section 4 shall be fully paid for and nonassessable. The policies shall contain such provisions, endorsements, and expiration dates as Lender from time to time reasonably requests and shall be in such form and amounts, and be issued by such insurance companies doing business in the State of where the Mortgaged Property is located, as Lender shall approve in Lender's sole and absolute discretion. Unless otherwise expressly approved in writing by Lender, each insurer shall have a Best Rating of Class A, Category VIII, or better. All policies shall (a) contain a waiver of subrogation endorsement; (b) provide that the policy will not lapse or be canceled, amended, or materially altered (including by reduction in the scope or limits of coverage) without at least 30 days prior written notice to Lender; (c) with the exception of the comprehensive general liability policy, contain a mortgagee's

©2007 Geraci Law Firm; All Rights Reserved

8

Rev. 4/11

CF ____ Borrower's Initials

endorsement (438 BFU Endorsement or equivalent), and name Lender as insureds; and (d) include such deductibles as Lender may approve. If a policy required under this Section 4 contains a co-insurance or overage clause, the policy shall include a stipulated value or agreed amount endorsement acceptable to Lender.

**4.5.  Duplicate Originals or Certificates.**  Duplicate original policies evidencing the insurance required under this Section 4 and any additional insurance that may be purchased on the Mortgaged Property by or on behalf of Borrower shall be deposited with and held by Lender and, in addition, Borrower shall deliver to Lender (a) receipts evidencing payment of all premiums on the policies and (b) duplicate original renewal policies or a binder with evidence satisfactory to Lender of payment of all premiums at least 30 days before the policy expires. In lieu of the duplicate original policies to be delivered to Lender under this Section 4.5, Borrower may deliver an underlier of any blanket policy, and Borrower may also deliver original certificates from the issuing insurance company, evidencing that such policies are in full force and effect and containing information that, in Lender's reasonable judgment, is sufficient to allow Lender to ascertain whether such policies comply with the requirements of this Section 4.5.

**4.6.  Increased Coverage.**  If Lender determines that the limits of any insurance carried by Borrower are inadequate or that additional coverage is required, Borrower shall, within 10 days after written notice from Lender, procure such additional coverage as Lender may require in Lender's sole and absolute discretion.

**4.7.  No Separate Insurance.**  Borrower shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this Section 4 unless endorsed in favor of Lender as required by this Section 4.7 and otherwise approved by Lender in all respects.

**4.8.  Transfer of Title.**  In the event of foreclosure of this Security Instrument or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part, of the Obligations and the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required under this Section 4 or otherwise then in force with respect to the Mortgaged Property and all proceeds payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Mortgaged Property.

**4.9.  Replacement Cost.**  For purposes of this Section 4, the term "full insurable value" means the actual cost of replacing the Mortgaged Property in question, without allowance for depreciation, as calculated from time to time (but not more often than once every calendar year) by the insurance company or companies holding such insurance or, at Lender's request, by appraisal made by an appraiser, engineer, architect, or contractor proposed by Borrower and approved by said insurance company or companies and Lender. Borrower shall pay the cost of such appraisal.

**4.10.  No Warranty.**  No approval by Lender of any insurer may be construed to be a representation, certification, or warranty of its solvency and no approval by Lender as to the amount, type, or form of any insurance may be construed to be a representation, certification, or warranty of its sufficiency.

**4.11.  Lender's Right to Obtain.**  Borrower shall deliver to Lender original policies or certificates evidencing such insurance at least 30 days before the existing policies expire. If any such policy is not so delivered to Lender or if any such policy is canceled, whether or not Lender has the policy in its possession, and no reinstatement or replacement policy is received before termination of insurance, Lender, without notice to or demand on Borrower, may (but is not obligated to) obtain such insurance insuring only Lender with such company as Lender may deem satisfactory, and pay the premium for such policies, and the amount of any premium so paid shall be charged to and promptly paid by Borrower or, at Lender's option, may be added to the Indebtedness. Borrower acknowledges that, if Lender obtains insurance, it is for the sole benefit of Lender, and Borrower shall not rely on any insurance obtained by Lender to protect Borrower in any way.

**4.12.  Duty to Restore After Casualty.**  If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) results in damage to or loss or destruction of the Mortgaged Property, Borrower shall immediately give notice of such loss or damage to Lender and, if Lender so instructs, shall promptly, at Borrower's sole cost and expense, regardless of whether any insurance proceeds will be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately before the damage, loss, or destruction.

**5.  Condemnation and Insurance Proceeds.**

**5.1.  Assignment to Lender.**  The proceeds of any award or claim for damages, direct or consequential, in

©2007 Geraci Law Firm; All Rights Reserved

9

Rev. 4/11

CF Borrower's Initials

connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Security Instrument, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Security Instrument, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

**5.2.** **Insurance Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

5.2.1.   Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of any one of which shall constitute a default under this Security Instrument, the Note, and any Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this Section 5 shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

5.2.2.   If fewer than all conditions (a) through (i) in Section 5.2.1 are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Security Instrument in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this Section 5.2.2 to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) in Section 5.2.1 shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

**5.3.** **Material Loss Not Covered.** If any material part of the Mortgaged Property is damaged or destroyed and

---

©2007 Geraci Law Firm; All Rights Reserved   10

Borrower's Initials

the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

**5.4.    Total Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Security Instrument in such order as Lender may determine, until the Indebtedness secured by this Security Instrument has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Security Instrument shall be paid to Borrower as its interest may then appear.

**5.5.    Partial Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such funds and the other equal to the amount by which such funds exceed the principal balance of the Note at the time of receipt of such funds. The first such portion shall be applied to the sums secured by this Security Instrument, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower.

**5.6.    No Cure or Waiver of Default.** Any application of such amounts or any portion of it to any Indebtedness secured by this Security Instrument shall not be construed to cure or waive any default or notice of default under this Security Instrument or invalidate any act done under any such default or notice.

**6 .  Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Security Instrument, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Security Instrument or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Security Instrument, whether or not specified in this Security Instrument.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 6(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this Section 6, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Security Instrument to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

**7 .  Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Security Instrument; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

©2007 Geraci Law Firm; All Rights Reserved                                   11                                   Rev. 4/11

Borrower's Initials

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. In accordance with Section 19.13, any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Security Instrument, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Security Instrument, including those in Section 44.

**8.  Right to Collect and Receive Rents.** Despite any other provision of this Security Instrument, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Security Instrument or in the performance of any of the Obligations, and Lender shall have the rights set forth in the laws and regulations where the Mortgaged Property is located regardless of whether declaration of default has been delivered to Lender as provided in Section 44 of this Security Instrument, and without regard to the adequacy of the security for the Indebtedness secured by this Security Instrument. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Security Instrument, after execution and delivery of declaration of default and demand for sale as provided in this Security Instrument or during the pendency of Lender's sale proceedings under this Security Instrument or judicial foreclosure, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorney Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Security Instrument, in such order as Lender may decide. Nothing in this Security Instrument, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Security Instrument to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Security Instrument. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Security Instrument shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the

Borrower's Initials

Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

**9.** **Funds for Taxes and Insurance.** If Borrower is in default under this Security Instrument or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the obligations of Borrower under the Note and this Security Instrument as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Security Instrument in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this Section 9 shall be deemed to affect any right or remedy of Lender under any other provision of this Security Instrument or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Security Instrument. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this Section 9 is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this Section 9. Notwithstanding the preceding, Borrower and Lender may agree to impounds of taxes and insurance which impounds shall be identified in the Note.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Security Instrument. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Security Instrument, apply such amounts or any portion of it to any Indebtedness secured by this Security Instrument, and such application shall not be construed to cure or waive any default or notice of default under this Security Instrument.

If Lender requires deposits to be made under this Section 9, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Security Instrument, Lender shall have the right to transfer all amounts deposited under this Section 9 to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Security Instrument for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

**1 0.** **Assignment of Causes of Action, Awards, and Damages.** All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Security Instrument was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Security Instrument. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorney Fees, incurred by Lender in recovering or collecting any sums under this Section 10, Lender may apply or release the balance of any funds received by it under this section, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this section and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails to or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or

Borrower's Initials

proceeding at its own expense and risk.

**11. Defense of Security Instrument; Litigation.** Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents. Despite any other provision of this Security Instrument, Borrower agrees that Lender may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorney Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Security Instrument, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents, and that if Lender elects not to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender, including costs of evidence of title and Attorney Fees, in any such action or proceeding in which Lender may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Security Instrument or to enforce any of its terms or provisions.

**12. Borrower's Failure to Comply With Security Instrument.** If Borrower fails to make any payment or do any act required by this Security Instrument, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Note or this Security Instrument, Lender may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Security Instrument, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents, Lender being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

**13. Sums Advanced to Bear Interest and to Be Secured by Security Instrument.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender under any provision of this Security Instrument or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender shall be added to, and become a part of, the Indebtedness secured by this Security Instrument and bear interest from the date of advancement or payment by Lender at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Security Instrument or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Security Instrument or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Security Instrument and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Security Instrument to the same extent and with the same priority as the principal and interest payable under the Note.

**14. Inspection of Mortgaged Property.** In addition to any rights Lender may have under the laws and regulations where the Mortgaged Property is located, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

**15. Financial Statements; Estoppel Certificates.**

**15.1.  Borrower's Financial Statements.** On receipt of Lender's written request and without expense to Lender, Borrower shall furnish to Lender (a) an annual statement of the operation of the Mortgaged Property prepared and certified by Borrower, showing in reasonable detail satisfactory to Lender total Rents received and total expenses together with an annual balance sheet and profit and loss statement, within 90 days after the close of each fiscal year of Borrower,

©2007 Geraci Law Firm; All Rights Reserved                                14                                    Rev. 4/11

Borrower's Initials

beginning with the fiscal year first ending after the date of recordation of this Security Instrument; (b) within 30 days after the end of each calendar quarter (March 31, June 30, September 30, December 31) interim statements of the operation of the Mortgaged Property showing in reasonable detail satisfactory to Lender total Rents and other income and receipts received and total expenses for the previous quarter, certified by Borrower; and (c) copies of Borrower's annual state and federal income tax returns within 30 days after filing them. Borrower shall keep accurate books and records, and allow Lender, its representatives and agents, on notice, at any time during normal business hours, access to such books and records regarding acquisition, construction, development, and operations of the Mortgaged Property, including any supporting or related vouchers or papers, shall allow Lender to make extracts or copies of any such papers, and shall furnish to Lender and its agents convenient facilities for the audit of any such statements, books, and records.

**15.2.** **Recordkeeping.** Borrower shall keep adequate records and books of account in accordance with generally accepted accounting principles and practices and shall permit Lender, by its agents, accountants, and attorneys, to examine Borrower's records and books of account and to discuss the affairs, finances, and accounts of Borrower with the officers of Borrower, at such reasonable times as Lender may request.

**15.3.** **Guarantors' Financial Statements.** Except to the extent already required by Section 15.1, Borrower, its controlling shareholders, and all guarantors of the Indebtedness, if any, shall deliver to Lender with reasonable promptness after the close of their respective fiscal years a balance sheet and profit and loss statement, prepared by the principal of the Borrower or an independent certified public accountant satisfactory to Lender, setting forth in each case, in comparative form, figures for the preceding year, which statements shall be accompanied by the unqualified opinion of the principal of the Borrower or such accountant as to their accuracy. Throughout the term of this Security Instrument, Borrower and any guarantor shall deliver, with reasonable promptness, to Lender such other information with respect to Borrower or guarantor as Lender may from time to time request. All financial statements of Borrower or guarantor shall be prepared using reasonably accepted accounting practices applied on a consistent basis and shall be delivered in duplicate. Documents and information submitted by Borrower to Lender are submitted confidentially, and Lender shall not disclose them to third parties and shall limit access to them to what is necessary to service the loan, accomplish the normal administrative, accounting, tax-reporting, and other necessary functions, to sell all or any part of the loan and to report such information as required to the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Internal Revenue Service, and similar entities.

**15.4.** **Estoppel Certificates.** Within 10 days after Lender's request for such information, Borrower shall execute and deliver to Lender, and to any third party designated by Lender, in recordable form, a certificate from the principal financial or accounting officer of Borrower, dated within 3 days after delivery of such statements, or the date of such request, as the case may be, reciting that the Loan Documents are unmodified and in full force and effect, or that the Loan Documents are in full force and effect as modified and specifying all modifications asserted by Borrower. Such certificate shall also recite the amount of the Indebtedness and cover other matters with respect to the Indebtedness or Obligations as Lender may reasonably require, the date(s) through which payments due on the Indebtedness have been paid and the amount(s) of any payments previously made on the Indebtedness. The certificate shall include a detailed statement of any right of setoff, counterclaim, or other defense that Borrower contends exists against the Indebtedness or the Obligations; a statement that such person knows of no Event of Default or prospective Event of Default that has occurred and is continuing, or, if any Event of Default or prospective Event of Default has occurred and is continuing, a statement specifying the nature and period of its existence and what action Borrower has taken or proposes to take with respect to such matter; and, except as otherwise specified, a statement that Borrower has fulfilled all Obligations that are required to be fulfilled on or before the date of such certificate.

**15.5.** **Failure to Deliver Estoppel Certificate.** If Borrower fails to execute and deliver the certificate required by Section 15.4 within such 10-day period, (a) the Loan Documents shall, as to Borrower, conclusively be deemed to be either in full force and effect, without modification, or in full force and effect, modified in the manner and to the extent specified by Lender, whichever Lender reasonably and in good faith may represent; (b) the Indebtedness shall, as to Borrower, conclusively be deemed to be in the amount specified by Lender and no setoffs, counterclaims, or other defenses exist against the Indebtedness; and (c) Borrower shall conclusively be deemed to have irrevocably constituted and appointed Lender as Borrower's special attorney-in-fact to execute and deliver such certificate to any third party.

**15.6.** **Reliance on Estoppel Certificate.** Borrower and Lender expressly agree that any certificate executed and delivered by Borrower, or any representation in lieu of a certificate made by Lender under Section 15.5, may be relied on by any prospective purchaser or any prospective assignee of any interest of Lender in the Note and other Indebtedness secured by this Security Instrument or in the Mortgaged Property, and by any other person, without independent

Borrower's Initials

investigation or examination, to verify the accuracy, reasonableness, or good faith of the recitals in the certificate or representation.

**15.7.**    **No Waiver of Default or Rights.** Lender's exercise of any right or remedy provided by this Section 15 shall not constitute a waiver of, or operate to cure, any default by Borrower under this Security Instrument, or preclude any other right or remedy that is otherwise available to Lender under this Security Instrument or Governmental Requirements.

**16.    Uniform Commercial Code Security Agreement.** This Security Instrument is intended to be and shall constitute a security agreement under the Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Security Instrument, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Security Instrument or executed duplicate original of this Security Instrument, or a copy certified by a County Recorder in the state where the Mortgaged Property is located, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Security Instrument in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in the Non-Uniform Covenants section of this Security Instrument as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in the Non-Uniform Covenants section of this Security Instrument.

**17. Fixture Filing.** This Security Instrument constitutes a financing statement filed as a fixture filing under Uniform Commercial Code, as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement.

**18.    Waiver of Statute of Limitations.** Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Security Instrument, to the fullest extent permitted by Governmental Requirements.

**19.    Events of Default.** The term Event of Default as used in this Security Instrument means the occurrence or happening, at any time and from time to time, of any one or more of the following:

**19.1.**    **Payment of Indebtedness.** Borrower fails to pay any installment of interest and/or principal under the Note or any other Indebtedness when due and payable whether on maturity, the date stipulated in any Loan Document, by acceleration, or otherwise.

**19.2.**    **Performance of Obligations.** The failure, refusal, or neglect to perform and discharge fully and timely any of the Obligations as and when required.

**19.3.**    **Judgment.** If any final judgment, order, or decree is rendered against Borrower or a guarantor and is not paid or executed on, or is not stayed by perfection of an appeal or other appropriate action, such as being bonded, or is not otherwise satisfied or disposed of to Lender's satisfaction within 30 days after entry of the judgment, order, or decree.

**19.4.**    **Voluntary Bankruptcy.** If Borrower or any guarantor (a) seeks entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code; (b) seeks, consents to, or does not contest the appointment of a receiver or Lender for itself or for all or any part of its property; (c) files a petition seeking relief under the bankruptcy, arrangement,

©2007 Geraci Law Firm, All Rights Reserved                                    16                                    Rev 4/11

Borrower's Initials

reorganization, or other debtor relief laws of the United States or any state or any other competent jurisdiction; (d) makes a general assignment for the benefit of its creditors; or (e) states in writing its inability to pay its debts as they mature.

**19.5.** **Involuntary Bankruptcy.** If (a) a petition is filed against Borrower or any guarantor seeking relief under any bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or other competent jurisdiction; or (b) a court of competent jurisdiction enters an order, judgment, or decree appointing, without the consent of Borrower or any guarantor, a receiver or Lender for it, or for all or any part of its property; and (c) such petition, order, judgment, or decree is not discharged or stayed within 30 days after its entry.

**19.6.** **Foreclosure of Other Liens.** If the holder of any lien or security interest on the Mortgaged Property (without implying Lender's consent to the existence, placing, creating, or permitting of any lien or security interest) institutes foreclosure or other proceedings to enforce its remedies thereunder and any such proceedings are not stayed or discharged within 30 days after institution of such foreclosure proceedings.

**19.7.** **Sale, Lease, Encumbrance, or Other Transfer.** Any sale, lease, exchange, assignment, conveyance, encumbrance (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Security Instrument) (other than a Permitted Encumbrance), transfer of possession, or other disposition of all or any portion of the Land or Improvements or any of Borrower's interest in the Land or Improvement without Lender's prior written consent, or any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), or other disposition of any portion of the Personalty, without Lender's prior written consent.

**19.8.** **Title and Lien Priority.** If Borrower's title to any or all of the Mortgaged Property or the status of this Security Instrument as a First position lien and security interest on the Mortgaged Property is endangered in any manner, and Borrower fails to cure the same on Lender's demand; provided, however, that Borrower shall not be in default under this section if Borrower is diligently pursuing a contest or cure of such title or lien issue and Borrower has posted adequate security to protect Lender's rights, interest, and priority under this Security Instrument, as determined by Lender.

**19.9.** **Other Defaults.** The occurrence of an Event of Default or any default, as defined or described in the other Loan Documents, or the occurrence of a default on any Indebtedness or Obligations.

**19.10.** **Levy on Assets.** A levy on any of the assets of Borrower or any guarantor, and such levy is not stayed or abated within 30 days after such levy.

**19.11.** **Breach of Representations.** The breach of any representation, warranty, or covenant in this Security Instrument or other Loan Documents.

**19.12.** **Default Under Prior Security Instrument or Lien.** The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Mortgaged Property and having priority over the lien of this Security Instrument.

**19.13.** **Violation of Governmental Requirements.** The failure of Borrower, any tenant, or any other occupant of the Mortgaged Property to comply with any Governmental Requirement. In accordance with section 7, any potential violation by a tenant or other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Security Instrument, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Security Instrument, including those provided in the Non-Uniform Covenants section.

**20.** **Acceleration on Transfer or Encumbrance.**

**20.1.** **Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Security Instrument), or alienates the Mortgaged Property, or any interest in it, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or

©2007 Geraci Law Firm, All Rights Reserved

17

Rev. 4/11

CE___ Borrower's Initials

extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Security Instrument, including those in Section 21.

**20.2.    Replacement Personalty.** Despite the provisions of Section 20.1, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Security Instrument in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Security Instrument constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Security Instrument has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements.

**20.3.    Permitted Encumbrances.** If Lender consents in writing, which consent may not be unreasonably withheld, the due-on-encumbrance provision set forth in Section 20.1 shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Note); as long as Borrower gives Lender at least 30 days written notice of the further encumbrance and reimburses Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance.

## 21.  Borrower's Obligation to Notify Lender.

**21.1.    Bankruptcy, Insolvency, Transfer, or Encumbrance.** Borrower shall notify Lender in writing, at or before the time of the occurrence of any event described in Section 19 and 20 of this Security Instrument, of such event and shall promptly furnish Lender with any and all information on such event that Lender may request.

**21.2.    Government Notice.** Borrower shall give immediate written notice to Lender of any notice, proceeding or inquiry by any Governmental Authority. Borrower shall provide such notice to Lender within five (5) days of Borrower's knowledge, constructive or actual, of any such notice, proceeding or inquiry by any Government Authority.

**22.  Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Security Instrument, and despite any other provision of this Security Instrument, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Security Instrument and to establish the order in which all or any part of the Indebtedness secured by this Security Instrument is satisfied from the proceeds realized on the exercise of the remedies provided in this Security Instrument. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Security Instrument waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Security Instrument or otherwise provided by Governmental Requirements.

## 23.  Environmental Matters.

**23.1.    Borrower's Representations and Warranties.** Borrower represents and warrants to Lender that:

23.1.1.    The Mortgaged Property and Borrower are not in violation of any Environmental Laws or subject to any existing, pending, or threatened investigation by any Governmental Authority under any Environmental Laws.

23.1.2.    Borrower has not obtained and is not required by any Environmental Laws to obtain any permits or licenses to construct or use the Mortgaged Property or the Improvements.

23.1.3.    Borrower has conducted an appropriate inquiry into previous uses and ownership of the Mortgaged Property, and after such inquiry determined that no Hazardous Substance has been disposed of, transported,



Borrower's Initials

or released on or at the Mortgaged Property.

23.1.4.   No part of the Mortgaged Property is being used or, to the knowledge of Borrower, has been used at any previous time, for the disposal, storage, treatment, processing, transporting, or other handling of Hazardous Substances, nor is any part of the Mortgaged Property affected by any Hazardous Substance contamination.

23.1.5.   To the best of Borrower's knowledge and belief, no real property adjoining the Mortgaged Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Substances, nor is any other real property adjoining the Mortgaged Property affected by Hazardous Substances contamination.

23.1.6.   No investigation, administrative order, consent order or agreement, litigation, or settlement with respect to Hazardous Substances or Hazardous Substances contamination is proposed, threatened, anticipated, or in existence regarding the Mortgaged Property. The Mortgaged Property is not currently on, and to Borrower's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list.

23.1.7.   Borrower nor, to the best of Borrower's knowledge and belief, any tenant of any portion of the Mortgaged Property has received any notice from any Governmental Authority regarding any violation of any Environmental Laws.

23.1.8.   The use that Borrower makes and intends to make of the Mortgaged Property shall not result in the disposal or release of any Hazardous Substances on, in, or to the Mortgaged Property.

23.1.9.   Borrower shall not cause any violation of any Environmental Laws, nor permit any tenant of any portion of the Mortgaged Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Mortgaged Property.

23.1.10.   Neither Borrower nor any third party shall use, generate, manufacture, store, release, discharge, or dispose of any Hazardous Substance on, under, or about the Mortgaged Property, or transport any Hazardous Substance to or from the Mortgaged Property.

**23.2.   Survival of Representations and Warranties.** The foregoing representations and warranties shall be continuing and shall be true and correct for the period from the date of this instrument to the release of this Security Instrument (whether by payment of the Indebtedness secured by this Security Instrument or foreclosure or action in lieu of foreclosure), and these representations and warranties shall survive such release.

**23.3.   Notice to Lender.** Borrower shall give prompt written notice to Lender of:

23.3.1.   Any proceeding or inquiry by any Governmental Authority regarding the presence or threatened presence of any Hazardous Substance on the Mortgaged Property;

23.3.2.   All claims made or threatened by any third party against Borrower or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance;

23.3.3.   Any notice given to Borrower under Environmental Laws; and

23.3.4.   discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Mortgaged Property under any Environmental Laws.

**23.4.   Lender's Right to Join Legal Actions.** Lender shall have the right, at its option, but at Borrower's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Borrower or the Mortgaged Property in connection with any Environmental Laws.

**23.5.   Borrower's Indemnity.** Borrower shall indemnify, defend, and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against any loss, damage, cost, expense, or liability directly or indirectly arising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under, or about the Mortgaged Property, or any order, consent decree, or settlement relating to the cleanup of a Hazardous Substance, or any claims of loss, damage,

©2007 Geraci Law Firm; All Rights Reserved

19

$CF$ Borrower's Initials

liability, expense, or injury relating to or arising from, directly or indirectly, any disclosure by Lender to anyone of information, whether true or not, relative to a Hazardous Substance or Environmental Law violation, including, without limitation, Attorney Fees. This indemnity shall survive the release of this Security Instrument (whether by payment of the Indebtedness secured by this Security Instrument or foreclosure or action in lieu of foreclosure).

**24. No Waiver By Lender.** No waiver by Lender of any right or remedy provided by the Loan Documents or Governmental Requirements shall be effective unless such waiver is in writing and signed by two authorized officers of Lender. Waiver by Lender of any right or remedy granted to Lender under the Loan Documents or Governmental Requirements as to any transaction or occurrence shall not be deemed a waiver of any future transaction or occurrence. The acceptance of payment of any sum secured by this Security Instrument after its due date, or the payment by Lender of any Indebtedness or the performance by Lender of any Obligations of Borrower under the Loan Documents, on Borrower's failure to do so, or the addition of any payment so made by Lender to the Indebtedness secured by this Security Instrument, or the exercise of Lender's right to enter the Mortgaged Property and receive and collect the Rents from it, or the assertion by Lender of any other right or remedy under the Loan Documents, shall not constitute a waiver of Lender's right to require prompt performance of all other Obligations of Borrower under the Loan Documents and payment of the Indebtedness, or to exercise any other right or remedy under the Loan Documents for any failure by Borrower to timely and fully pay the Indebtedness and perform its Obligations under the Loan Documents. Lender may waive any right or remedy under the Loan Documents or Governmental Requirements without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or other interest in the Mortgaged Property that is junior to the lien of this Security Instrument, and without incurring liability to Borrower or any other person by so doing.

**25. Consents and Modifications; Borrower and Lien Not Released.** Despite Borrower's default in the payment of any Indebtedness secured by this Security Instrument or in the performance of any Obligations under this Security Instrument or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness, and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Security Instrument, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Note; (d) reduce the amount of the monthly installments due under the Note; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Security Instrument; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this section shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Security Instrument and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Security Instrument; or (iii) the lien or priority of the lien of this Security Instrument. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorney Fees as Lender may have advanced, for any action taken by Lender under this section.

Whenever Lender's consent or approval is specified as a condition of any provision of this Security Instrument, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

**26. Future Advances.** On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the Indebtedness secured by this Security Instrument when evidenced by promissory notes reciting that such note(s) are secured by this Security Instrument.

**27. Prepayment.** If the Note secured by this Security Instrument provides for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under this Security Instrument and Lender, for that reason or by reason of Section 20 and as provided in the Non-Uniform Covenants section of this Security Instrument, shall have declared all sums

Borrower's Initials

secured by this Security Instrument immediately due and payable.

**28. Additional Borrower Representations.** To induce Lender to enter into this Security Instrument, the Note, and the other Loan Documents and to make the Loan, Borrower makes the following representations and warranties, which are deemed made as of both the date and the recordation of this Security Instrument:

**28.1. Capacity.** Borrower and the individuals executing Loan Documents on Borrower's behalf have the full power, authority, and legal right to execute and deliver, and to perform and observe the provisions of this Security Instrument, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan, and to carry out the contemplated transactions.

**28.2. Authority and Enforceability.** Borrower's execution, delivery, and performance of this Security Instrument, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan have been duly authorized by all necessary corporate or other business entity action and do not and shall not require any registration with, consent, or approval of, notice to, or any action by any Person or Governmental Authority. Borrower has obtained or will obtain on or before the recordation of this Security Instrument all necessary Governmental Authority and other approvals necessary for Borrower to comply with the Loan Documents. This Security Instrument, the Note, and the other Loan Documents executed in connection with the Loan, when executed and delivered by Borrower, shall constitute the legal, valid, binding, and joint and several obligations of Borrower enforceable in accordance with their respective terms.

**28.3. Compliance With Other Instruments.** The execution and delivery of this Security Instrument and the other Loan Documents, and compliance with their respective terms, and the issuance of the Note and other Loan Documents as contemplated in this Security Instrument, shall not result in a breach of any of the terms or conditions of, or result in the imposition of, any lien, charge, or encumbrance (except as created by this Security Instrument and the other Loan Documents) on any properties of Borrower, or constitute a default (with due notice or lapse of time or both) or result in an occurrence of an event for which any holder or holders of indebtedness may declare the same due and payable under, any indenture, agreement, order, judgment, or instrument to which Borrower is a party or by which Borrower or its properties may be bound or affected.

**28.4. Compliance With Laws.** The execution and delivery of this Security Instrument, the Note, and the other Loan Documents, or any other document, agreement, certificate, or instrument to which Borrower is bound in connection with the Loan, do not conflict with, result in a breach or default under, or create any lien or charge under any provision of any Governmental Requirements to which it is subject and shall not violate any of the Governmental Requirements.

**28.5. Adverse Events.** Since the date of the financial statements delivered to Lender before recordation of this Security Instrument, neither the condition (financial or otherwise) nor the business of Borrower and the Mortgaged Property have been materially adversely affected in any way.

**28.6. Litigation.** There are no actions, suits, investigations, or proceedings pending or, to Borrower's knowledge after due inquiry and investigation, threatened against or affecting Borrower at law or in equity, before or by any Person or Governmental Authority, that, if adversely determined, would have a material adverse effect on the business, properties, or condition (financial or otherwise) of Borrower or on the validity or enforceability of this Security Instrument, any of the other Loan Documents, or the ability of Borrower to perform under any of the Loan Documents.

**28.7. No Untrue Statements.** All statements, representations, and warranties made by Borrower in this Security Instrument or any other Loan Document and any other agreement, document, certificate, or instrument previously furnished or to be furnished by Borrower to Lender under the Loan Documents (a) are and shall be true, correct, and complete in all material respects at the time they were made and on and as of the recordation of this Security Instrument, (b) do not and shall not contain any untrue statement of a material fact, and (c) do not and shall not omit to state a material fact necessary to make the information in them neither misleading nor incomplete. Borrower understands that all such statements, representations, and warranties shall be deemed to have been relied on by Lender as a material inducement to make the Loan.

**28.8. Policies of Insurance.** Each copy of the insurance policies relating to the Mortgaged Property delivered to Lender by Borrower (a) is a true, correct, and complete copy of the respective original policy in effect on the date of this Security Instrument, and no amendments or modifications of said documents or instruments not included in such copies have been made, except as stated in this Section 28.8 and (b) has not been terminated and is in full force and effect.

©2007 Geraci Law Firm; All Rights Reserved                                                 21                                                 Rev 4/11

Borrower's Initials

Borrower is not in default in the observance or performance of its material obligations under said documents or instruments and Borrower has done all things required to be done as of the date of this Security Instrument to keep unimpaired its rights thereunder

**28.9.    Financial Statements.** All financial statements furnished to Lender are true and correct in all material respects, are prepared in accordance with generally accepted accounting principles, and do not omit any material fact the omission of which makes such statement or statements misleading. There are no facts that have not been disclosed to Lender by Borrower in writing that materially or adversely affect or could potentially in the future affect the Mortgaged Property or the business prospects, profits, or condition (financial or otherwise) of Borrower or any guarantor or Borrower's abilities to perform the Obligations and pay the Indebtedness.

**28.10.    Water Rights.** (a) Borrower is the sole owner of record of the Water Rights; (b) the Water Rights are appurtenant to the Mortgaged Property and are free and clear of all liens and encumbrances except as set forth in the title policy described in Section 1.22; (c) the Water Rights are sufficient to satisfy all water requirements of the development of the Mortgaged Property as presently contemplated; (d) the Water Rights include all water rights appurtenant to the Mortgaged Property; (e) Borrower has received a water service commitment from the applicable local water district, guaranteeing water service for the Mortgaged Property in an amount necessary to satisfy the requirements for such property in its currently contemplated final state of development; and (f) on recordation of this Security Instrument with the county recorder, Lender shall have a valid, first priority, perfected security interest in the Water Rights.

**28.11.    Taxes.** Borrower has filed or caused to be filed all tax returns that are required to be filed by Borrower under the Governmental Requirements of each Governmental Authority with taxing power over Borrower, and Borrower has paid, or made provision for the payment of, all taxes, assessments, fees, and other governmental charges that have or may have become due under said returns, or otherwise, or under any assessment received by Borrower except that such taxes, if any, as are being contested in good faith and as to which adequate reserves (determined in accordance with generally accepted accounting principles) have been provided.

**28.12.    Leases.** If the Mortgaged Property includes a leasehold estate, Borrower has not and shall not surrender, terminate, cancel, waive, accept waiver, change, supplement, grant subleases of, alter, surrender, or amend, and shall comply with all terms, covenants, and conditions in the Leasehold.

**28.13.    Further Acts.** Borrower shall, at its sole cost and expense, and without expense to Lender, do, execute, acknowledge, and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers, and assurances as Lender shall from time to time require, for the purpose of better assuring, conveying, assigning, transferring, pledging, mortgaging, warranting, and confirming to Lender the Mortgaged Property and rights, and as to Lender the security interest as to the Personalty, conveyed or assigned by this Security Instrument or intended now or later so to be, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument, or for filing, registering, or recording this Security Instrument and, on demand, shall execute and deliver, and authorizes Lender to execute in the name of Borrower, to the extent it may lawfully do so, one or more financing statements, chattel mortgages, or comparable security instruments, to evidence more effectively the lien of this Security Instrument on the Mortgaged Property.

**28.14.    Filing Fees.** Borrower shall pay all filing, registration, or recording fees, all Governmental Authority stamp taxes and other fees, taxes, duties, imposts, assessments, and all other charges incident to, arising from, or in connection with the preparation, execution, delivery, and enforcement of the Note, this Security Instrument, the other Loan Documents, any supplemental deed of trust or mortgage, or any instrument of further assurance.

**28.15.    Entity Compliance.** As long as it is the owner of the Mortgaged Property, Borrower, if a corporation, limited liability company, or partnership, shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights, and privileges as such entity under the laws of the state of its incorporation or formation, and shall comply with all Governmental Requirements of any Governmental Authority applicable to Borrower or to the Mortgaged Property or any part of it.

**29.    Governing Law; Consent to Jurisdiction and Venue.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Mortgaged Property, this Security Instrument will be governed by the laws of the state in which the Mortgaged Property is located. In all other respects, the Security Instrument, the Note and all other documents related to the transaction are by agreement of the parties governed by the State of Oregon, unless expressly provided otherwise. The Parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than

Borrower's Initials

with respect to perfection and enforcement of Lender's rights against the Mortgaged Property, shall be the County in which notice shall be sent to Lender pursuant this Security Instrument, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: 

**30. Taxation of Security Instrument.** In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Security Instrument, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Security Instrument to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Security Instrument.

**31. Mechanics' Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Security Instrument shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanics', laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

**32. Brokerage.** Borrower represents and warrants to Lender that Borrower has not dealt with any Person, other than the parties identified in the final settlement statement, who are or may be entitled to any finder's fee, brokerage commission, loan commission, or other sum in connection with the execution of this Security Instrument, the consummation of the transactions contemplated by this Security Instrument, or the making of the Loan secured by this Security Instrument by Lender to Borrower, and Borrower indemnifies and agrees to hold Lender harmless from and against any and all loss, liability, or expense, including court costs and Attorney Fees, that Lender may suffer or sustain if such warranty or representation proves inaccurate in whole or in part.

**33. Liability for Acts or Omissions.** Lender shall not be liable or responsible for its acts or omissions under this Security Instrument, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

**34. Notices.** Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by the Loan Documents shall be in writing; (b) each notice shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; or (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be addressed to the appropriate party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

Lender:            Legacy Lending, LLC

                   At the address provided above

Borrower:          2 Big Legacy LLC

                   At the address provided above

Notices will be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail,

---

©2007 Geraci Law Firm; All Rights Reserved

23

Rev. 6/11

$C F$
___ ___ Borrower's Initials

the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

To the extent permitted by Governmental Requirements, if there is more than one Borrower, notice to any Borrower shall constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

**3 5 . Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Security Instrument.

**3 6 . Application of Payments.** Except as otherwise expressly provided by Governmental Requirements or any other provision of this Security Instrument, all payments received by Lender from Borrower under the Loan Documents shall be applied by Lender in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Security Instrument, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

**37. Remedies Are Cumulative.** Each remedy in this Security Instrument is separate and distinct and is cumulative to all other rights and remedies provided by this Security Instrument or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

**3 8 . Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Security Instrument shall be the joint and several obligations of each such Person.

**39. Severability.** If any provision of the Loan Documents, or the application of them to the circumstances, is held void, invalid, or unenforceable by a court of competent jurisdiction, the Loan Documents, and the applications of such provision to other parties or circumstances, shall not be affected thereby, the provisions of the Loan Documents being severable in any such instance.

**40. Delegation of Authority.** Whenever this Security Instrument provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

**41. General Provisions.**

   **41.1.    Successors and Assigns.** Subject to Sections 19 and 20 of this Security Instrument, this Security Instrument applies to, inures to the benefit of, and binds, the respective heirs, legatees, devisees, administrators, executors, successors, and assigns of each party to this Security Instrument.

   **41.2.    Meaning of Certain Terms.** As used in this Security Instrument and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Security Instrument as a whole, rather than any particular provision of it.

   **41.3.    Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Security Instrument, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

   **41.4.    Gender and Number.** Wherever the context so requires in this Security Instrument, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

   **41.5.    Captions.** Captions and section headings used in this Security Instrument are for convenience of reference only, are not a part of this Security Instrument, and shall not be used in construing it.

   **41.6.    Time Is of the Essence.** As a material inducement and consideration to the parties entering into this Security Instrument, and but for this provision the parties would not enter into this Security Instrument, the parties agree that the performance in a timely manner of each deadline set forth in this Security Instrument before its expiration is of crucial importance to the parties. Failure by a party to timely perform an obligation before the deadline set forth in this


Borrower's Initials

Security Instrument (no matter for what reason, nor how soon thereafter it may have been performed, nor the lack of prejudice to the other party as the result of such nonperformance) shall result in a default by the nonperforming party or the failure of a condition, as appropriate. The parties expressly waive any equitable relief with respect to a missed deadline.

## 42.  Improper Financial Transactions.

**42.1.**  Borrower is, and shall remain at all times, in full compliance with all applicable laws and regulations of the United States of America that prohibit, regulate or restrict financial transactions, and any amendments or successors thereto and any applicable regulations promulgated thereunder (collectively, the "Financial Control Laws"), including but not limited to those related to money laundering offenses and related compliance and reporting requirements (including any money laundering offenses prohibited under the Money Laundering Control Act, 18 U.S.C. Section 1956 and 1957 and the Bank Secrecy Act, 31 U.S.C. Sections 5311 et seq.) and the Foreign Assets Control Regulations, 31 C.F.R. Section 500 et seq.

**42.2.**  Borrower represents and warrants that: Borrower is not a Barred Person (hereinafter defined); Borrower is not owned or controlled, directly or indirectly, by any Barred Person; and Borrower is not acting, directly or indirectly, for or on behalf of any Barred Person.

**42.3.**  Borrower represents and warrants that it understands and has been advised by legal counsel on the requirements of the Financial Control Laws.

**42.4.**  Under any provision of this Security Instrument or any of the other Loan Documents where Lender shall have the right to approve or consent to any particular action, including, without limitation any (A) sale, transfer, assignment of the Mortgaged Property, or any direct or indirect ownership interest in Borrower, (B) leasing of the Mortgaged Property, or any portion thereof, or (C) incurring any additional financing secured by Mortgaged Property, or any portion thereof, or by any direct or indirect ownership interest in Borrower, Lender shall have the right to withhold such approval or consent, in its sole discretion, if the granting of such approval or consent could be construed as a violation of any of the Financial Control Laws.

**42.5.**  Borrower covenants and agrees that it will upon request provide Lender with (or cooperate with Lender in obtaining) information required by Lender for purposes of complying with any Financial Control Laws.

**42.6.**  As used in this Security Instrument, the term "Barred Person" shall mean (A) any person, group or entity named as a "Specially Designated National and Blocked Person" or as a person who commits, threatens to commit, supports, or is associated with terrorism as designated by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), (B) any person, group or entity named in the lists maintained by the United States Department of Commerce (Denied Persons and Entities), (C) any government or citizen of any country that is subject to a United States Embargo identified in regulations promulgated by OFAC, and (D) any person, group or entity named as a denied or blocked person or terrorist in any other list maintained by any agency of the United States government.

## 43.  Dispute Resolution: Waiver of Right to Jury Trial

**43.1.**  **ARBITRATION.**  CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

**43.2.**  **WAIVER OF RIGHT TO JURY TRIAL.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS SECURITY INSTRUMENT. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS SECURITY INSTRUMENT, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS SECURITY INSTRUMENT OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR

©2007 Geraci Law Firm; All Rights Reserved

Rev. 4/11

Borrower's Initials

RELATED FUTURE DEALINGS, AND (6) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS SECURITY INSTRUMENT.

BORROWER'S INITIALS: _____

**43.3.**    **PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in Section 43.2, above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver), or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in Section 43.2, above. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in Section 43.2, above.

**43.4.**    **Contractual Right to Appoint a Receiver Upon Default.** Upon an Event of Default under this Security Instrument or a breach of any clause of any agreement signed in connection with the loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

### NON-UNIFORM COVENANTS.

Borrower and Lender further covenant and agree as follows:

### 44.   Default; Acceleration; Remedies.

**44.1.**    If an Event of Default has occurred and is continuing, Lender, at its option, may declare the Indebtedness to be immediately due and payable without further demand, and may either with or without entry or taking possession as herein provided or otherwise, proceed by suit or suits at law or in equity or any other appropriate proceeding or remedy 1.1 to enforce payment of the Loan; 44.1.2 to foreclose this Security Instrument judicially or non-judicially by the power of sale granted herein; 44.1.3 to enforce or exercise any right under any Loan Document; and 44.1.4 to pursue any one (1) or more other remedies provided in this Security Instrument or in any other Loan Document or otherwise afforded by applicable law. Each right and remedy provided in this Security Instrument or any other Loan Document is distinct from all other rights or remedies under this Security Instrument or any other Loan Document or otherwise afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order. Borrower has the right to bring an action to assert the nonexistence of an Event of Default or any other defense of Borrower to acceleration and sale.

**44.2.**    Borrower acknowledges that the power of sale granted in this Security Instrument may be exercised or directed by Lender without prior judicial hearing and hereby appoints Lender as Borrower's agent and attorney-in-fact to exercise such power of sale in the name and on behalf of Borrower. In the event Lender invokes the power of sale:

44.2.1.    Borrower hereby authorizes and empowers Lender to take possession of the Mortgaged Property, or any part thereof, and hereby grants to Lender a power of sale and authorizes and empowers Lender to sell (or, in the case of the default of any purchaser, to resell) the Mortgaged Property or any part thereof, in compliance with applicable law, including compliance with any and all notice and timing requirements for such sale;

44.2.2.    Lender may sell and dispose of the Mortgaged Property at public auction with 30 days' notice

of the sale to Borrower, at the usual place and time for conducting sales at the courthouse in the county where all or any part of the Mortgaged Property is located, to the highest bidder for cash, first advertising date, terms and place of such sale by publishing a notice of sale once a week for four (4) consecutive weeks (without regard to the actual number of days) in a newspaper in which serves as the official publication of legal notices and advertisements in such county, all other notice being waived by Borrower; and Lender may thereupon execute and deliver to the purchaser a sufficient instrument of conveyance of the Mortgaged Property, which may contain recitals as to the happening of the Event of Default upon which the execution of the power of sale granted by this Section 21 depends. The recitals in the instrument of conveyance shall be presumptive evidence that Lender duly complied with all preliminary acts prerequisite to the sale and instrument of conveyance. Borrower constitutes and appoints Lender as Borrower's agent and attorney-in-fact to make such recitals, sale and conveyance;

44.2.3.  the power and agency granted in this Section 45 are coupled with an interest, are irrevocable by death or otherwise, and are in addition to the remedies for collection of the Indebtedness as provided by law. Borrower ratifies all of Lender's acts, as such attorney-in-fact, and Borrower agrees that such recitals shall be binding and conclusive upon Borrower and that the conveyance to be made by Lender (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy, and all other exemptions of Borrower, or its successors in interest, in and to the Mortgaged Property; and

44.2.4.  the Mortgaged Property may be sold in one (1) parcel and as an entirety, or in such parcels, manner or order as Lender, in its discretion, may elect, and one (1) or more exercises of the powers granted in this Section 45 shall not extinguish or exhaust the power unless the entire Mortgaged Property is sold or the Indebtedness is paid in full, and Lender shall collect the proceeds of such sale, applying such proceeds as provided in this Section 45. In the event of a deficiency, Borrower shall immediately on written demand from Lender pay such deficiency to Lender, subject to the provisions of the Note limiting Borrower's personal liability for payment of the Indebtedness. Borrower waives all rights, claims, and defenses with respect to Lender's ability to obtain a deficiency judgment. Borrower acknowledges that Lender may bid for and purchase the Mortgaged Property at any foreclosure sale and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

**44.3.**  If the Mortgaged Property is sold pursuant to this Section 45, Borrower, or any person holding possession of the Mortgaged Property through Borrower, shall surrender possession of the Mortgaged Property to the purchaser at such sale on demand. If possession is not surrendered on demand, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Georgia and Illinois law.

**44.4.**  Borrower covenants and agrees that Lender shall apply the proceeds of any sale in the following order:

44.4.1.  to all reasonable costs and expenses of the sale, including reasonable attorneys' fees actually incurred and costs associated with title evidence and the reasonable cost of such other professionals who provided services in connection with the sale or establishing a deficiency, if any;

44.4.2.  to the Indebtedness in such order as Lender, in Lender's discretion, directs; and

44.4.3.  the excess, if any, to the person or persons legally entitled to the excess.

**44.5.**  In connection with the exercise of Lender's rights and remedies under this Security Instrument and any other Loan Document, there shall be allowed and included as Indebtedness: (a) all expenditures and expenses authorized by applicable law and all other expenditures and expenses which may be paid or incurred by or on behalf of Lender for reasonable legal fees, outlays for documentary and expert evidence, stenographic charges and publication costs; (b) all expenses of any environmental site assessments, environmental audits, environmental remediation costs, appraisals, surveys, engineering studies, wetlands delineations, flood plain studies, and any other similar testing or investigation deemed necessary or advisable by Lender incurred in preparation for, contemplation of or in connection with the exercise of Lender's rights and remedies under the Loan Documents; and (c) costs (which may be reasonably estimated as to items to be expended in connection with the exercise of Lender's rights and remedies under the Loan Documents) of procuring all abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Lender may deem reasonably necessary either to prosecute any suit or to evidence the true conditions of the title to or the value of the Mortgaged Property to bidders at any sale which may be held in connection with the exercise of Lender's rights and remedies under the Loan Documents. All expenditures and expenses of the nature mentioned in this Section 21 and such other expenses and fees as may be incurred in the protection of the Mortgaged Property and rents

Borrower's Initials

and income therefrom and the maintenance or the lien of this Security Instrument, including the fees of any attorney employed by Lender in any litigation or proceedings affecting this Security Instrument, the Note, the other Loan Documents, or the Mortgaged Property, including bankruptcy proceedings, any foreclosure, or in preparation of the commencement or defense of any proceedings or threatened suit or proceeding, or otherwise in dealing specifically therewith, shall be so much additional Indebtedness and shall be immediately due and payable by Borrower, with interest thereon at the Default Rate until paid.

**44.6.** Any action taken by Lender pursuant to the provisions of this Section 45 shall comply with the laws of the Property Jurisdiction. Such applicable laws shall take precedence over the provisions of this Section 45, but shall not invalidate or render unenforceable any other provision of any Loan Document that can be construed in a manner consistent with any applicable law. If any provision of this Security Instrument shall grant to Lender (including Lender acting as a mortgagee-in-possession) or a receiver appointed pursuant to the provisions of this Security Instrument any powers, rights or remedies prior to, upon, during the continuance of or following an Event of Default that are more limited than the powers, rights, or remedies that would otherwise be vested in such party under any applicable law in the absence of said provision, such party shall be vested with the powers, rights, and remedies granted in such applicable law to the full extent permitted by law.

**45. Appointment of Receiver.** Following an Event of Default, the Lender shall be entitled to have a receiver appointed, *ex parte*, by a court over the Mortgaged Property, without notice and without regard for the adequacy of the security for the Indebtedness and without regard for the solvency of the Borrower, of any person, firm or other entity liable for the payment of the Indebtedness, and thereupon the receiver may (a) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (b) complete any construction on the Mortgaged Property in such manner and form as Lender deems advisable; (c) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (d) exercise all rights and powers of Borrower with respect to the Mortgaged Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents; and (e) apply the receipts from the Mortgaged Property to the payment of Indebtedness, after deducting therefrom all expenses (including reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments insurance and other charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of the receiver, its counsel, agents and employees. In the event this Section 46 is inconsistent with any other provision of the Security Instrument, including Section 43.4, this Section shall supersede any other provisions.

**4 6 . WAIVER OF BORROWER'S RIGHTS.** BY EXECUTION OF THIS SECURITY INSTRUMENT, BORROWER EXPRESSLY (A) ACKNOWLEDGES THE RIGHT OF LENDER TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND ANY OTHER INDEBTEDNESS AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PROPERTY BY NON-JUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY INSTRUMENT; (B) WAIVES ANY AND ALL RIGHTS WHICH BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS OF THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY INSTRUMENT AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALLING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; AND (C) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF BORROWER HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY BORROWER AS PART OF A BARGAINED FOR LOAN TRANSACTION AND THAT THIS SECURITY INSTRUMENT IS VALID AND ENFORCEABLE BY LENDER AGAINST BORROWER IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

BORROWER'S INITIALS: _CF_ _____

**47. Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Security Instrument. Borrower shall pay any recordation costs unless Georgia law provides otherwise. Lender may charge Borrower a fee for

releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Georgia law.

**48.** To the fullest extent permitted by law, Borrower agrees that Borrower will not at any time insist upon, plead, claim or take the benefit or advantage of any present or future law providing for any appraisement, valuation, stay, extension or redemption, homestead, moratorium, reinstatement, marshaling or forbearance, and Borrower, for Borrower, Borrower's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Mortgaged Property, to the fullest extent permitted by law, waives and releases all rights of redemption, valuation, appraisement, stay of execution, reinstatement (including all rights under O.C.G.A. Section 44-14-85), notice of intention to mature or declare due the whole of the Indebtedness, and all rights to a marshaling of assets of Borrower, including the Mortgaged Property.

**49.** This Security Instrument secures future advances.

**50.** This conveyance is intended to and shall constitute and be construed as (1) a deed passing fee title to the Mortgaged Property to Lender, and is made under those provisions of the existing laws of the State of Georgia (O.C.G.A. Section 44-14-60 *et seq.*) relating to conveyances and deeds to secure debt (a/k/a "security deed"), and not a mortgage, and is given to secure the payment and performance of the Indebtedness, and (2) a security agreement pursuant to the provisions of the Uniform Commercial Code of Georgia, Title 11 of the Official Code of Georgia.

**51.** Lender's acceptance, if any, of an assumption of the obligations of this Security Instrument and the Note, and the release of Borrower pursuant to the Loan Agreement, shall not constitute a novation and shall not affect the priority of the lien created by this Security Instrument.

**52.** Borrower represents and warrants to Lender that neither all nor any part of the Mortgaged Property is to be used as a dwelling place by Borrower at the time this Security Instrument is entered into; however, the notice requirements of O.C.G.A. Section 44-14-162.2 shall be applicable to any exercise of the power of sale contained in this Security Instrument.

**53.** The interest of Lender under this Security Instrument and the liability and obligation of Borrower for the Indebtedness arise from a "commercial transaction" within the meaning of O.C.G.A. Section 44-14-260(1). Accordingly, pursuant to O.C.G.A. Section 44-14-263, Borrower waives any and all rights which Borrower may have to notice (other than as may be expressly provided for herein) prior to seizure by Lender of any interest in personal property of Borrower which constitutes part of the Mortgaged Property, whether such seizure is by writ of possession or otherwise.

**54.  Assignment of Rents.** This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under Georgia law.

**55.  Waiver of Right of Offset.** No portion of the Indebtedness secured by this Security Instrument shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives, to the fullest extent permitted by Governmental Requirements, the benefits any rights to offset under Georgia law.

**56.  Statement Related to Fixture Filing.** This Security Instrument shall also constitute a "fixture filing" for the purposes of the Uniform Commercial Code upon all OR ANY PORTION OF the Mortgaged Property which is or is to become "fixtures" (as that term is defined in the Uniform Commercial Code), upon being filed for record in the real estate records of the county wherein such fixtures are located, and for such purpose the following information is given:

| | |
|---|---|
| Name of Debtor: | 2 Big Legacy LLC |
| Address of Debtor: | 3681 Hunters Pace Drive |
| Name of Secured Party: | Legacy Lending, LLC |
| Description of the collateral: | 3751 Martin Luther King Junior Drive Southwest, Atlanta, GA 30331 |
| Description of real estate to which collateral is attached or upon which it is or will be located and record owner of such real estate: | The real estate is described on Exhibit "A" to this Security Instrument |

Record owner of the real estate (including the name in which such real estate is held

©2007 Geraci Law Firm; All Rights Reserved                                     29                                     Rev. 4/11

Borrower's Initials

for a trust if different from the name of the debtor for purposes of a financing statement):                                                                    N/A

IN WITNESS WHEREOF, Borrower has signed and delivered this Security Instrument under seal (where applicable) or has caused this Security Instrument to be signed and delivered by its duly authorized representative under seal (where applicable) as of the date first written above.. Where applicable law so provides, Borrower intends that this Security Instrument shall be deemed to be signed and delivered as a sealed instrument.

**BORROWER:**

**2 Big Legacy LLC**

Christopher O. Flournoy, Member of 2 Big Legacy LLC

Date:  06 | 01 | 2022

Borrower's Initials

Signed, sealed, and delivered before the undersigned:

_Jasmin Perry_

Unofficial Witness

Name: Jasmin Perry

_Leonard Medley_

Notary Public

Name: Leonard Medley

My commission expires: 2/26/24

[NOTARY SEAL]

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___Georgia___ )
County of ___Cobb___ )
On ___June 1, 2022___ before me, ___Leonard Medly___, Notary Public

Date        Here Insert Name of the Officer

Personally Appeared ___Chris Shaw___

*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___GA___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

*Signature of Notary Public*



©2007 Geraci Law Firm; All Rights Reserved

32

Rev 4/11

Borrower's Initials

## EXHIBIT "A"

### LEGAL PROPERTY DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING IN AND BEING IN LAND LOT 15, DISTRICT 14FF, CITY OF ATLANTA, FULTON COUNTY, GEORGIA; AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE CONCRETE MONUMENT MARKING THE INTERSECTION OF THE NORTHEASTERLY RIGHT OF WAY OF MARTIN LUTHER KING JR. DRIVE (80' R/W) AND THE NORTHERLY RIGHT OF WAY OF BOLTON ROAD (RAW VARIES), WHICH IS THE POINT OF BEGINNING; THENCE TRAVELING ALONG THE NORTHEASTERLY RIGHT OF WAY OF MARTIN LUTHER KING JR. DRIVE NORTH 32 DEGREES 11 MINUTES 47 SECONDS WEST A DISTANCE OF 164.45 FEET TO A CONCRETE MONUMENT FOUND; THENCE CONTINUING ALONG SAID RIGHT OF WAY ALONG A CURVE TO THE RIGHT WITH AN ARC DISTANCE OF 3.84 FEET AND A RADIUS OF 3100.77 FEET, BEING SUBTENDED BY A CHORD OF NORTH 32 DEGREES 13 MINUTES 47 SECONDS A DISTANCE OF 3.84 FEET TO A 1/2" REBAR FOUND; THENCE LEAVING SAID RIGHT OF WAY NORTH 81 DEGREES 31 MINUTES 33 SECONDS EAST A DISTANCE OF 271.50 FEET TO AN OPEN-TOP PIPE FOUND; THENCE RUNNING NORTH 01 DEGREES 11 MINUTES 37 SECONDS EAST A DISTANCE OF 356.89 FEET TO A 1/2" REBAR FOUND; THENCE SOUTH 88 DEGREES 32 MINUTES 24 SECONDS WEST A DISTANCE OF 269.20 FEET TO A 1/2" REBAR FOUND; THENCE NORTH 01 DEGREES 28 MINUTES 00 SECONDS WEST A DISTANCE OF 172.06 FEET TO A POINT; THENCE SOUTH 89 DEGREES 41 MINUTES 00 SECONDS EAST A DISTANCE OF 82.38 FEET TO AN OPEN-TOP PIPE FOUND; THENCE SOUTH 30 DEGREES 55 MINUTES 41 SECONDS EAST A DISTANCE OF 70.63 FEET TO AN OPEN-TOP PIPE FOUND; THENCE SOUTH 89 DEGREES 13 MINUTES 51 SECONDS EAST A DISTANCE OF 340.84 FEET TO A POINT; THENCE SOUTH 07 DEGREES 47 MINUTES 17 SECONDS WEST A DISTANCE OF 45.93 FEET TO A POINT; THENCE SOUTH 06 DEGREES 49 MINUTES 25 SECONDS WEST A DISTANCE OF 147.88 FEET TO A CRIMPED-TOP PIPE FOUND; THENCE SOUTH 76 DEGREES 16 MINUTES 56 SECONDS EAST A DISTANCE OF 268.81 FEET TO A POINT ON THE WESTERLY RIGHT OF WAY OF BOLTON ROAD; THENCE RUNNING ALONG THE WESTERLY AND NORTHERLY RIGHT OF WAY OF BOLTON ROAD THE FOLLOWING FIVE (5) COURSES AND DISTANCES: THENCE ALONG A CURVE TO THE RIGHT WITH AN ARC DISTANCE OF 217.74 FEET AND A RADIUS OF 762.00 FEET, BEING SUBTENDED BY A CHORD OF SOUTH 18 DEGREES 30 MINUTES 49 SECONDS WEST A DISTANCE OF 217.00 FEET TO A POINT, THENCE SOUTH 26 DEGREES 58 MINUTES 47 SECONDS WEST A DISTANCE OF 82.15 FEET TO A CONCRETE MONUMENT FOUND; THENCE NORTH 62 DEGREES 55 MINUTES 43 SECONDS WEST A DISTANCE OF 28.90 FEET TO A 1/2" REBAR FOUND; THENCE SOUTH 26 DEGREES 52 MINUTES 47 SECONDS WEST A DISTANCE OF 97.40 FEET TO A 1/2" REBAR FOUND; THENCE SOUTH 86 DEGREES 04 MINUTES 30 SECONDS WEST A DISTANCE OF 435.09 FEET TO THE TRUE POINT OF BEGINNING.
PARCEL ID : 14F-0015-0004-032-7.

©2007 Geraci Law Firm; All Rights Reserved

33

Rev 4/11

Borrower's Initials

GEORGIA                LOAN NUMBER:
Order number:
GRANTOR:          2 BIG LEGACY LLC
LENDER:            Legacy Lending, LLC
DATE OF SECURITY DEED:   May 18, 2022

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND **THE POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered in the presence of:

Witness

Notary Public: Leonard Medley
My Commission Expires:

2 BIG LEGACY LLC, a Georgia Limited Liability Company

By: _____
CHRISTOPHER FLOURNOY, MEMBER

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower, I reviewed with and explained to the Borrower the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower of Borrower of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower of Borrower's rights. After said review with and explanation to Borrower,  Borrower executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____
Closing Attorney

Notary Public: _____
My Commission Expires: _____

Deed Book 65814 Page 354
CATHELENE ROBINSON
Clerk of Superior Court

GEORGIA
GRANTOR:
LENDER:
DATE OF SECURITY DEED:

LOAN NUMBER:
2 BIG LEGACY LLC
Legacy Lending, LLC
May 18, 2022

## FORECLOSURE CLOSING
## DISCLOSURE

O.C.G.A Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

2 BIG LEGACY LLC, a Georgia Limited Liability Company

By: _____
CHRISTOPHER FLOURNOY, MEMBER

Signed, sealed and delivered in the presence of:

_____
UNOFFICIAL WITNESS

_____
Notary Public
My Commission Expires: _____
SEAL:



# EXHIBIT C

ed Book 65836 Page 563
Filed and Recorded 06/21/2022 05:44:00 PM
2022-0215819
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 7102053502
7087927936

WHEN RECORDED MAIL TO
Simplifile

RECORDING REQUESTED BY:
Aldridge Pite, LLP
c/o Maxton M. Berg
4375 Jutland Drive, Suite 200
San Diego, CA 92117

Order Granting Motion for Relief from Stay

**GRANTORS: Standing Ovation Renovations, LLC**

**GRANTEE: NuBridge Commercial Lending**

**IT IS ORDERED as set forth below:**

**Date: May 31, 2022**



_Wendy L. Hagenau_

Wendy L. Hagenau
U.S. Bankruptcy Court Judge

Filed in Clerk's Office and
a true copy certified this
_13_ day of _June_, 2022
M. REGINA THOMAS, CLERK

By: _____
Deputy Clerk

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA - ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 22-52645-wlh |
| STANDING OVATION RENOVATIONS, LLC, | CHAPTER: 7 |
| Debtor. | JUDGE: HONORABLE WENDY L. HAGENAU |
| NUBRIDGE COMMERCIAL LENDING LLC, | |
| Movant, | |
| v. | CONTESTED MATTER |
| STANDING OVATION RENOVATIONS, LLC, Debtor, NEIL C. GORDON, Trustee, | |
| Respondent(s). | |

ORDER GRANTING MOTION FOR RELIEF FROM STAY AND FOR A FINDING
PURSUANT TO 11 USC SECTION 362(d)(4)(A) (#6)

The above styled Motion was called for hearing on May 26, 2022, upon Notice of

Assignment of Hearing to each of the above-captioned parties in interest. At the hearing Counsel

for the Movant, Counsel for the Debtor, and the Chapter 7 Trustee each appeared on record. Upon

findings of fact and of law, the Court concludes that Movant is entitled to relief from the Automatic

Stay of 11 U.S.C. § 362(a) and for a finding pursuant to 11 U.S.C. § 362(d)(4). Accordingly;

IT IS HEREBY ORDERED that the Automatic Stay 11 U.S.C. § 362(a) is modified for

Movant herein, its successors and assigns, regarding the real property commonly known as 3751

Martin Luther King Dr. SW, Atlanta, GA 30331 (the "Property").

IT IS FURTHER ORDERED that Movant, its successors and assigns, may assert its rights,

including, but not limited to, the institution and completion of foreclosure proceedings, the

collection of reasonable fees, and may assert all of its respective rights and remedies under

applicable law, as to its collateral.

IT IS FURTHER ORDERED that Movant, its successors and assigns, may assert its

respective rights and remedies under applicable law, as to its collateral.

IT IS FURTHER ORDERED that relief from the Automatic Stay is granted under 11

U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of

interests or liens in real property, the order is binding in any other case under this title purporting

to affect the Property filed not later than 2 years after the date of the entry of the order by the court,

except that a debtor in a subsequent case under this title may move for relief from the order based

upon changed circumstances or for good cause shown, after notice and hearing.

IT IS FURTHER ORDERED that the relief granted pursuant to 11 U.S.C. § 362(d)(4) shall

be binding and effective in any other case under this title purporting to affect the Property

notwithstanding the existence of the co-debtor stay of 11 U.S.C. §1201(a) or §1301(a) in said case.

IT IS FURTHER ORDERED that the provisions of Bankruptcy Rule 4001(a)(3) are

waived.

[END OF DOCUMENT]

Deed Book 65836 Page 566

PREPARED AND PRESENTED BY:

/s/ *Brian K. Jordan*
Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center  3575 Piedmont
Road, N.E., Suite 500  Atlanta, GA 30305
Toll-Free: (844) 470-8804
Fax: (619) 590-1385
Email: bjordan@aldridgepite.com

DISTRIBUTION LIST

Deed Book 65836 Page 567
CATHELENE ROBINSON
Clerk of Superior Court

Standing Ovation Renovations, LLC
4483 Lionshead Circle
Lithonia, GA 30038

William A. Rountree
Rountree Leitman & Klein, LLC
Century Plaza I, Suite 350
2987 Clairmont Road
Atlanta, GA 30329

Filed in Clerk's Office and
a true copy certified this
13day of June , 2022
M. REGINA THOMAS, CLERK
By
Deputy Clerk

Neil C. Gordon, Chapter 7 Trustee
Arnall Golden Gregory LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

ALDRIDGE PITE, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305

# EXHIBIT D

Deed Book 65879 Page 291
Filed and Recorded 07/01/2022 10:55:00 AM
2022-0225445
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 2869972434

**Prepared By & Return To:**
MEDLEY & ASSOCIATES, LLC
2727 PACES FERRY RD SE
BLD 2 STE 1450
ATLANTA, GA 30339
(770) 319-7592
File No. 202205004

PARCEL ID:
14F-0015-0004-032-7.
AND 14F-0015-0004-047-5

## QUITCLAIM DEED

THIS INDENTURE, made between ALVAREZ INVESTEMENT GROUP LLC, a

Georgia Limited Liability Company of the County of DEKALB and State of GEORGIA, AND

Standing Ovation Renovations, LLC  hereinafter called "Grantors," and 2 BIG LEGACY

LLC, a Georgia Limited Liability Company of the County of DEKALB and State of GEORGIA,

hereinafter collectively called "Grantee" (the words "Grantor" and "Grantee" to include their

respective heirs, successors and assigns where the context requires or permits).

### W I T N E S S E T H:

Grantor, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable

considerations in hand paid at and before the sealing and delivery of these presents, the receipt

whereof is hereby acknowledged, by these presents do hereby remise, convey and forever

quitclaim unto the Grantee  all its interest in the following described real estate:

ALL THAT TRACT OR PARCEL OF LAND LYING IN AND BEING IN LAND LOT
15, DISTRICT 14FF, CITY OF ATLANTA, FULTON COUNTY, GEORGIA; AND BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE CONCRETE
MONUMENT MARKING THE INTERSECTION OF THE NORTHEASTERLY RIGHT OF
WAY OF MARTIN LUTHER KING JR. DRIVE (80' R/W) AND THE NORTHERLY RIGHT
OF WAY OF BOLTON ROAD (RAW VARIES), WHICH IS THE POINT OF BEGINNING;
THENCE TRAVELING ALONG THE NORTHEASTERLY RIGHT OF WAY OF MARTIN
LUTHER KING JR. DRIVE NORTH 32 DEGREES 11 MINUTES 47 SECONDS WEST A
DISTANCE OF 164.45 FEET TO A CONCRETE MONUMENT FOUND; THENCE
CONTINUING ALONG SAID RIGHT OF WAY ALONG A CURVE TO THE RIGHT WITH
AN ARC DISTANCE OF 3.84 FEET AND A RADIUS OF 3100.77 FEET, BEING
SUBTENDED BY A CHORD OF NORTH 32 DEGREES 13 MINUTES 47 SECONDS A
DISTANGE OF 3.84 FEET TO A 1/2" REBAR FOUND; THENCE LEAVING SAID RIGHT
OF WAY NORTH 81 DEGREES 31 MINUTES 33 SECONDS EAST A DISTANCE OF
271.50 FEET TO AN OPEN-TOP PIPE FOUND; THENCE RUNNING NORTH 01 DEGREES
11 MINUTES 37 SECONDS EAST A DISTANCE OF 356.89 FEET TO A 1/2" REBAR
FOUND; THENCE SOUTH 88 DEGREES 32 MINUTES 24 SECONDS WEST A DISTANCE
OF 269.20 FEET TO A 1/2" REBAR FOUND; THENCE NORTH 01 DEGREES 28 MINUTES
00 SECONDS WEST A DISTANCE OF 172.06 FEET TO A POINT; THENGE SOUTH 89
DEGREES 41 MINUTES 00 SECONDS EAST A DISTANCE OF 82.38 FEET TO AN OPEN-
TOP PIPE FOUND; THENCE SOUTH 30 DEGREES 55 MINUTES 41 SECONDS EAST A
DISTANCE OF 70.63 FEET TO AN OPEN-TOP PIPE FOUND; THENCE SOUTH 89
DEGREES 13 MINUTES 51 SECONDS EAST A DISTANCE OF 340.84 FEET TO A POINT;
THENCE SOUTH 07 DEGREES 47 MINUTES 17 SECONDS WEST A DISTANCE OF 45.93
FEET TO A POINT; THENCE SOUTH 06 DEGREES 49 MINUTES 25 SECONDS WEST A

DISTANCE OF 147.88 FEET TO A CRIMPED-TOP PIPE FOUND; THENCE SOUTH 76
DEGREES 16 MINUTES 56 SECONDS EAST A DISTANCE OF 268.81 FEET TO A POINT
ON THE WESTERLY RIGHT OF WAY OF BOLTON ROAD; THENCE RUNNING ALONG
THE WESTERLY AND NORTHERLY RIGHT OF WAY OF BOLTON ROAD THE
FOLLOWING FIVE (5) COURSES AND DISTANCES: THENCE ALONG A CURVE TO
THE RIGHT WITH AN ARC DISTANCE OF 217.74 FEET AND A RADIUS OF 762.00
FEET, BEING SUBTENDED BY A CHORD OF SOUTH 18 DEGREES 30 MINUTES 49
SECONDS WEST A DISTANCE OF 217.00 FEET TO A POINT, THENCE SOUTH 26
DEGREES 58 MINUTES 47 SECONDS WEST A DISTANCE OF 82.15 FEET TO A
CONCRETE MONUMENT FOUND; THENCE NORTH 62 DEGREES 55 MINUTES 43
SECONDS WEST A DISTANCE OF 28.90 FEET TO A 1/2" REBAR FOUND; THENCE
SOUTH 26 DEGREES 52 MINUTES 47 SECONDS WEST A DISTANCE OF 97 .40 FEET TO
A 1/2" REBAR FOUND; THENCE SOUTH 86 DEGREES 04 MINUTES 30 SECONDS WEST
A DISTANCE OF 435,09 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL ID : 14F-0015-0004-032-7.
**AND 14F-0015-0004-047-5**

TOGETHER WITH any and all the rights, privileges, easements, improvements and

appurtenances to the same belonging.

TO HAVE AND TO HOLD the said described premises to Grantee, so that neither

Grantor nor any person or persons claiming under Grantor shall at any time, by any means or

ways, have, claim or demand any right or title to said premises or appurtenances, or any rights

thereof.

IN WITNESS WHEREOF, Grantor have signed and sealed this deed, the 18th day of

May, 2022.

ALVAREZ INVESTEMENT GROUP LLC, a
Georgia Limited Liability Company

By: _____(SEAL)
JOANNA BURNLEY, MEMBER

Standing Ovation Renovations, LLC, a Georgia
Limited Liability Company

By: _____(SEAL)
DEXTER HULL, MEMBER

Case 22-58826-wlh    Doc 25    Filed 11/15/22    Entered 11/15/22 09:54:24    Desc Main
Document    Page 62 of 63

STATE OF GEORGIA
COUNTY OF COBB

This instrument was witnessed by me this 18th day of May, 2022,

_____
Witness

Signature Notary

ASNEY  Kinnebrew
Name of Notary Typed, Stamped, or Printed
Notary Public, State of Georgia

Quitclaim Deed

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| 2 BIG LEGACY LLC, | CASE NO.: 22-58826-WLH |
| Debtor. | |

## CERTIFICATE OF SERVICE

I certify that I have this day served a true and correct copy of the within and foregoing MOTION TO ANNUL THE AUTOMATIC STAY NUNC PRO TUNC AND DISMISS DEBTOR'S BANKRUPTCY CASE with the Clerk of Court by using the Court's CM/ECF system, which will serve as notice to all counsel and sent via U.S. Mail to the following:

2 Big Legacy LLC
4483 Lionshead Circle
Lithonia, Georgia 30038

2 Big Legacy LLC
Suite 244
2870 Peachtree Road
Atlanta, GA 30305

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Felisa Harris-Mychals
Harris Law Group
111 Petrol Point
Peachtree City, Georgia 30269

Lisa Wolgast, Esq.
MORRIS, MANNING & MARTIN, LLP
3343 Peachtree Road, N.E. Suite 1600
Atlanta, Georgia 30326

This 15th Day of November, 2022.

Respectfully submitted,

**BELL CARRINGTON PRICE & GREGG, LLC**

By: /s/ J. Martin Page
S. Lindsay Carrington (lcarrington@bellcarrington)
Georgia Bar No.: 165708
J. Martin Page (mpage@bellcarrington.com)
Georgia Bar No.: 241558
Jacob Greifer (jgreifer@bellcarrington.com)
Georgia Bar No.: 751515
*Attorneys for Legacy Lending, LLC*

339 Heyward Street, 2nd Floor
Columbia, SC 29201
803.509.5078